P2LBCOLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

MICHAEL STEINBERG, ANTHONY
YUSON, *et al*,

                    Plaintiffs/Movants,

          v.                            24 Civ. 9027 (KPF)

WARNER BROS. DISCOVERY, INC.,

                    Defendant.
                                        Conference
-------------------------------x
                                        New York, N.Y.
                                        February 21, 2025
                                        11:15 a.m.

Before:

                    HON. KATHERINE POLK FAILLA,

                                        District Judge

                         APPEARANCES

POMERANTZ, LLP
     Attorneys for Plaintiffs/Movants
     Michael Steinberg and Richard Collura
BY:  JOSEPH A. HOOD, II

THE ROSEN LAW FIRM
     Attorneys for Plaintiff/Movant Anthony Yuson
BY:  PHILLIP C. KIM
     CHRISTIE BUZZETTI

WEIL, GOTSHAL & MANGES, LLP
     Attorneys for Defendants
BY:  CAROLINE ZALKA
     AMBER VENTURELLI

P2LBCOLC

(Case called)

THE DEPUTY CLERK:  Counsel, please state your name for the recording beginning with plaintiff.

MR. HOOD:  Good morning, your Honor.  Alex Hood of Pomerantz, LLP, on behalf of lead plaintiff movant Michael Steinberg.

THE COURT:  Thank you so much.  Good morning to you.

MR. KIM:  Good morning, your Honor.  Phillip Kim, Rosen Law Firm, for lead plaintiff movant, also is Christie Buzzetti associate from my office.  She's admitted in New York, but not yet admitted to Southern District. With the Court's permission, can she sit at counsel's table?

THE COURT:  Of course, yes. She has an oral pro hac vice motion granted for purposes of this conference.  Thank you and welcome.

MS. ZALKA:  Good morning, your Honor.  Caroline Zalka for defendants, and with me is my colleague Amber Venturelli who is admitted, but has not formally entered a notice of appearance yet.  I ask with the Court's permission she could seat at counsel's table?

THE COURT:  Absolutely. And I know she will be entering a notice appearance soon enough.  Thank you. I appreciate everyone coming today. The reason we're having this conference is, first of all, because I believe that lead plaintiff and lead plaintiff's counsel should be done in open

P2LBCOLC

court and not through stipulations; but secondly, because I was not comfortable with the idea of the proposed lead plaintiffs just saying, We'll join forces and have everyone.

I've had very bad experiences with this instance where two putative lead plaintiffs offer their services as joint lead plaintiffs and then their counsel offer.  And then -- and I say this with all respect, Mr. Hood, having the additional counsel, which you see me put in air quotes, just added fuel to the fire.  So I am today disinclined to have all three firms involved.  I'm indeed disinclined to have two firms involved, but I did not want to pre-decide anything.  So I would like to hear from you, please if I may, as to why your proposed plaintiff is the better proposed better, unless you believe that they're not.

And then if you wish to persist, I'll let you talk to me more about the idea of joining forces.  I'm just telling you, I've had universally bad experiences.  For me it has been a duplication of efforts.  It's been difficulty finding a contact person for me.  I have to sort of go around and figure out if it's this area, it must be a different this law firm. I'm just not interested in doing that.  But when I've seen the bills when I've reviewed them later on in life, it has been excessive for my taste.  And knowing this case as I do, I don't think it's necessary.  You may ultimately persuade me that it is, so I don't want to tell you it's dead.  I'm just telling

P2LBCOLC

you I'm disinclined.

For my friends at the back table, I imagine you're not going to be saying much of anything.  You'll answer questions if I ask you because that's the right thing to do, but you're not taking a position with respect to either putative lead plaintiff.  Am I correct?

MS. ZALKA:  That's correct, your Honor.

THE COURT:  Okay.  Thank you.  Mr. Hood, may I please hear from you first simply because you're to my left.

MR. HOOD:  Certainly, your Honor.  And we present the opportunity to present today and hopefully to address the Court's concerns. I will take a stab at that understanding your Honor's position.

In the first instance, the difference between the losses of our client Michael Steinberg and Mr. Kim's client, Mr. Yuson is quite minimal.  The delta is only about 60 or so dollars.  Our client is also a perfectly adequate and typical class representative under Rule 23.  That said, pursuant to the PSLRA strict criteria, we have no basis to oppose Mr. Yuson's appointment.  That said, Mr. Steinberg is perfectly capable of serving as a lead plaintiff in this action.

THE COURT:  Let's make sure I understand the law.  My understanding is the person with the largest loss is the presumptive lead plaintiff.

MR. HOOD:  That's correct.

P2LBCOLC

THE COURT:  And you're not disputing that as a matter of fact, Mr. Yuson has a higher loss than Mr. Steinberg?

MR. HOOD:  Correct, your Honor.

THE COURT:  Okay.  And I appreciate that you all work in the same space and you want to maintain cordial relations with folk in this space, but I am asking you if there are bases that would allow me to depart from that presumption here?  And if you believe that there are not, then you can tell me.  If you believe that there are, you can tell me.  And if you believe that the delta in loss is functionally insignificant, you can tell me that too.

MR. HOOD:  We do believe that the delta is functionally insignificant, your Honor.  That said, we have no issues.  We see no basis to dispute Mr. Yuson's adequacy or typicality under Rule 23.

THE COURT:  All right.  Anything else you'd like me to know, sir?

MR. HOOD:  With the speedy opportunity to take one final stab at convincing your Honor for a colead arrangement?

THE COURT:  Sure.

MR. HOOD:  I appreciate the Court's consideration.  We certainly understand the Court's concerns.  We realize that that's always at least a possibility when there is a colead counsel arrangement when you have multiple cooks in the kitchen.  Bottom line, we believe that our two firms

P2LBCOLC

specifically would be able to prosecute this case in a way that would avoid the issues that the Court's encountered in the past.

THE COURT:  Please pause for a moment, sir. Is it not your firm that also has the gentleman, the additional firm, or are you jettisoning him?

MR. HOOD:  Your Honor, it is our firm that has the additional counsel on our signature block.  I'd be happy to address the role they have played to date and to describe what role they would have going forward.  If that is ultimately a singular sticking point, then I'd be happy to confer with our client as to whether that firm's involvement would be necessary going forward, but I'm not able to unilaterally jettison them to use the Court's word.

THE COURT:  Yes. I'll let you speak to the colead arrangement, but understand two is distasteful to me.  Three is really distasteful, but stranger things have happened, sir.  Go ahead.

MR. HOOD:  I understand, your Honor, and thank you. Bottom line, our two firms have a strong track record in prosecuting securities class actions, not only individually, but collectively.  Our stipulation laid out I believe a total of eight cases that Pomerantz and Rosen firms have jointly prosecuted to favorable settlements as colead counsel.  And significantly, I'm not aware that in any of those cases a court

P2LBCOLC

ended up taking issue in reviewing our fee applications with respect to any apparent duplicative work or unnecessary work or otherwise raise any questions as to the quality or quantity of work that was performed.

So our review in essence is that having both of our firms involved in this would increase the resources and expertise available to the class.  And that given our experience -- and this isn't merely theoretical or speculative on our part, we have a demonstrated track record of being able to do this in a way that does not disadvantage the class, that does not drive up costs.  Bottom line, we've done this frequently enough.  We know how to prosecute these cases efficiently and collaborate efficiently.  I would specifically direct the Court's attention to the case before Judge Furman which he saw fit to appoint our two firms as colead counsel on behalf of class Fiat Chrysler Investors where we secured a $110 million cash settlement for the class there.

In essence that's our view as to why it would be appropriate to have two firms as colead counsel here.  Briefly addressing the additional counsel point.  The Bronstein Law Firm has performed limited work strictly on behalf of our client Mr. Steinberg in this case.  Mr. Steinberg first learned of the case by I believe reviewing a press release Bronstein firm issued.  He contacted the Bronstein firm.  The Bronstein firm recommended that if he wish to seek appointment as lead

P2LBCOLC

plaintiff, he might consider designating Pomerantz as his proposed lead counsel given our resources and track record. After we spoke with Mr. Steinberg, he agreed to do so.

The Bronstein firm has performed some work in connection with helping Mr. Steinberg organize his trading records and the relevant securities, reviewing pleadings and generally serving in a limited liaison capacity. To be entirely clear, we are not seeking a leadership role for the Bronstein firm. If Mr. Steinberg was appointed to a leadership role here, their role would be limited largely to what I've described.

THE COURT: But they've already done what you've described. I don't see what the role is for them going forward.

MR. HOOD: They would continue to perform some liaison work for the client. The client has certainly placed some value on the work they provided to date. That said in the unlikely event perhapes that the Court's sole sticking point is the involvement of the Bronstein firm, then I'd be glad to have a conversation with that firm and our client, but I can't unilaterally make any changes to that arrangement today.

THE COURT: I understand, sir. And I appreciate the fact that you're not willing to completely cut them off without at least talking to them first. Mr. Hood, I want to raise a sensitive subject, but I feel like I just have to raise it.

P2LBCOLC

Let me explain it.  I've had seven cases with Mr. Kim, and two of them in particular were just awful; *Zagami v. Cellceutix* and *Wyche v. Advanced Drainage Systems*.  You're telling me you can work well together, and I want to hear you, and then Mr. Kim can tell me why I'm overreacting or things have gotten much better since those two cases.  But the fact that I remember them so vividly, and you're suggesting you want to work with him is causing me some concern.  Please.

MR. HOOD:  I understand, your Honor.  Unfortunately, I certainly can't speak to the Court's experience in those cases. I can only say that our firm has not encountered difficulties in other cases collaborating with the Rosen law firm.

THE COURT:  I've just had really bad luck then.  Okay. Mr. Kim.

MR. KIM:  Yes, your Honor.  As to those two cases, they were sometime ago.  And as a litigator, there will be bumps.  You learn from those bumps.  And it's not our intention to reproduce history.  Our policy is to learn from prior incidents, case law, and authorities and to move forward and go beyond that.  So I apologize if those two cases were not experiences that the Court found to be enjoyable.

THE COURT:  You were nearly sanction, sir, in se gam mi.

MR. KIM:  Understood, your Honor. And I haven't been sanctioned since that incident, and we certainly learn from

P2LBCOLC

those experiences, your Honor.

But as to the lead plaintiff motions here, your Honor, if the Court is incline to only appoint one investor, I think it's acknowledged that my client has the largest financial interest, and there's no basis to rebut that presumption. So in that instance, I think the Court would appoint our client as lead plaintiff and my firm as lead counsel. Just to further echo what Mr. Hood has said, we are cognizant that in certain situations when multiple firms team up, it can be a mess. I think to address those concerns; one, is our history of being able to work together and produce excellent results.

But as to your concern about sort of housekeeping administrative roles, we could appoint one specific attorney from either my firm or Mr. Hood's firm assuming that we're appointed colead as the prime contact that would spread whatever the Court wanted the plaintiff group to do. And usually in the past when we've worked together, we've allocated assignments. There might be an assignment where the Pomerantz firm would lead the investigation. The Rosen firm may lead the drafted amended complaint, and the Pomerantz firm may be on briefing points. So that's how we would ordinarily divide up the work. It's certainly not within our incentive to sort of duplicate the efforts here. This is not a huge case, and certainly the Court will review any fee application that is submitted.

P2LBCOLC

And with sort of the cautionary statements and the concerns the Court already has, we certainly are not going to want to present billing records later on in the case that show the exact same thing the Court was concerned about at the beginning of the case, cause we would understand that would have consequences to whatever fee application we would submit. I think that being said, unless the Court has any questions, I'll sit down and keep my mouth shut. That's it.

THE COURT: All right. Thank you. I'm confirming my friends at the back table have nothing to add?

MS. ZALKA: We have nothing to add, your Honor. Thank you.

THE COURT: This is a more difficult decision than you might think because I do appreciate that Mr. Yuson has the larger loss, but I am chastened from working with the Rosen law firm only. So I will do what I didn't want to do, which is I will appoint Mr. Yuson and Mr. Steinberg as colead plaintiffs and both firms as colead counsel. You'll talk to Mr. Bronstein and figure out an extremely limited role for them to play going forward. Mr. Hood, I will interface with you. I don't care how you guys divide up the work between you, but I will interface with you.

MR. HOOD: Your Honor, if I may. The case will actually be managed by my partner Josh Silverman in Chicago. He will be the partner in charge of the case.

P2LBCOLC

THE COURT:  That's very strange for you to show up then, sir.

MR. HOOD:  Your Honor, my team at Pomerantz is responsible for litigating these cases through the appointment of a lead plaintiff, at which point one of my colleagues generally takes over.  Mr. Silverman has already begun his investigation.  Given the geography, I'm local.  He's not. That's why I'm here today rather than Mr. Silverman.

THE COURT:  If your firm's continued involvement were dependent on you being the interface with me, would you remain on?

MR. HOOD:  Yes, your Honor.

THE COURT:  Then that's the way it will go.

MR. HOOD:  Understood, your Honor.  Thank you.

THE COURT:  All right. Now that you all know that, let me please understand is it the intention of my friends at the front table to file a consolidated amended class action complaint?

MR. HOOD:  It is, your Honor, yes.

MR. KIM:  Yes, your Honor.

THE COURT:  Great.  Ms. Buzzetti, I just want you to be able to speak on the record.  Is there a schedule that your team has worked out, or is it something that you would be working on over the next week or so to propose to me?

MS. BUZZETTI:  Your Honor, we would be working on a

P2LBCOLC

schedule, yes.

THE COURT:  Thank you.  And you'll be dealing with Ms. Venturelli so that she too can actually speak on the record?

MS. BUZZETTI:  Your Honor, yes.

THE COURT:  May I have the proposed schedule for what I imagine -- hold on, please.  Stay there.  Ms. Venturelli, is it your client's present intention to move to dismiss whatever consolidated complaint is filed?

MS. VENTURELLI:  Yes, your Honor.

THE COURT:  All right. I would build in time for an answer.  Just based on how these cases go, it's usually the case based on what you know it would be your intention to move to dismiss.  So you'll work with folks at the front table to propose a schedule.  That schedule will be the filing of a consolidated amended class action complaint, and then a briefing schedule for it.  Ms. Buzzetti, does that make sense to you?

MS. BUZZETTI:  It does, your Honor, yes.

THE COURT:  I thank you so much.  And Ms. Venturelli does it make sense to you?

MS. VENTURELLI:  Yes.

THE COURT:  I'll ask my friends at the front table, is there anything else we should be addressing today?

MR. KIM:  Nothing, your Honor.  Thank you.

P2LBCOLC

MR. HOOD:  Nothing here, your Honor.

THE COURT:  I thank you so much.  Friends at the back table, anything else today?

MS. VENTURELLI:  No, your Honor.

THE COURT:  Thank you so much for coming in.  I'll look forward to reading more about this case. I'm very interested in it.  I thank you so much.  We're adjourned.

(Adjourned)