# EXHIBIT 1

Case 1:24-cv-09027-KPF    Document 51-2    Filed 08/25/25    Page 2 of 6



# National Basketball Association

July 24, 2024

**BY EMAIL AND OVERNIGHT MAIL**

Turner Broadcasting System, Inc.
1050 Techwood Dr. NW
Atlanta, GA 30318
Attention: Luis Silberwasser, Chairman and CEO, TNT Sports
(luis.silberwasser@wbd.com)

Re:  Amazon Offer

Dear Luis:

Reference is made to the NBA/TBS Agreement between the National Basketball Association, as agent for its member teams ("NBA"), and Turner Broadcasting System, Inc. ("TBS"), dated October 3, 2014 (the "NBA/TBS Agreement").  All capitalized terms not otherwise defined in this letter shall have the meaning ascribed to them in the NBA/TBS Agreement.

On July 17, 2024, the NBA presented to TBS an offer it had received from Amazon (the "Amazon Offer") providing for NBA game distribution rights in the U.S. exclusively via streaming over the Internet.  On July 22, 2024, TBS responded with a letter and revised offer document – together with a redlined version showing its many substantive changes to the Amazon Offer – stating that TBS "has elected to match" the Amazon Offer by distributing the games on TNT (a linear cable network) and/or Max (an Internet video streaming service).

Even assuming that the NBA/TBS Agreement, including Exhibit C thereof ("Exhibit C"), granted TBS the right to Match the Amazon Offer (which it does not for the reasons stated in my letter of July 17, 2024), TBS's purported match does not constitute a Match under Exhibit C.

The Amazon Offer provides that NBA game rights can only be exercised via Internet distribution and that all games must be distributed by the licensee's most-widely-distributed, digital-only, subscription video streaming service.  In its purported match, TBS deleted and replaced that core grant of rights – eliminating the requirement of Internet streaming only and purporting to permit the distribution of NBA games on the linear TNT cable network – and thereby fundamentally changed (and expanded for TBS's benefit) a foundational element of the Amazon Offer.

Case 1:24-cv-09027-KPF          Document 51-2          Filed 08/25/25          Page 3 of 6

Turner Broadcasting System, Inc.
Attn: Luis Silberwasser
July 24, 2024
Page 2

Exhibit C of the NBA/TBS Agreement expressly forecloses TBS's attempt to match the Amazon offer in this fashion. Paragraph C.4 of Exhibit C provides:

> "In the event that an Incumbent Matches a Third Party Offer that provides for the exercise of Game Rights via any specific form of combined audio and video distribution, such Incumbent shall have the right and obligation to exercise such Game Rights *only* via the specified form of combined audio and video distribution (e.g., *if the specified form of combined audio and video distribution is Internet distribution, a Matching Incumbent may not exercise such Game Rights via television distribution*) through a distributor reasonably acceptable to NBA" (emphasis added).

Further, Paragraphs B.1(a) & (b) of Exhibit C require an Incumbent attempting to Match an offer to "accept each term" of the offer, and to "enter[] into a license agreement on the terms and conditions provided for in [the offer] during the Match Window." TBS has failed to comply with these provisions by not accepting the numerous terms of the Amazon Offer that refer or relate to, or are based on, the streaming-only distribution platform authorized thereunder. *See, e.g., Amazon Offer,* Sections 10(a), 10(b), 10(c), 10(d). Accordingly, for this reason as well, TBS has failed to Match the Amazon Offer.

TBS's contention that the NBA is "attempting to … frustrate [its] matching rights by agreeing to limit the number of other partners who may distribute NBA games on linear cable" is not accurate. As TBS knows, such limitations are commonly requested by media companies to protect the value of their rights packages and are standard in national media agreements of this nature. Indeed, the existing NBA/TBS Agreement includes stringent limitations on the number of partners and types of distribution platforms to which the NBA can currently license games, and TBS proposed the inclusion of similar restrictions in its negotiations with the NBA for a renewal agreement.

TBS's rewrite of the grant of rights in the Amazon Offer does not stand alone. In its purported match of the Amazon Offer, TBS also changed – and thereby failed to accept – numerous other substantive terms of the Amazon Offer, with each of these changes representing an independent basis for concluding that it has failed to make a proper Match under Exhibit C. A representative (non-exhaustive) sample of these changes includes the following:

- Security of Rights Payments. Amazon offered to provide financial security to the NBA through, *inter alia*, the establishment of a rights fee escrow account, into which the licensee is required to deposit and maintain three seasons of rights fee payments on a rolling basis and from which rights fees would automatically be disbursed to the NBA on the agreed-upon payment schedule (thereby avoiding the potential for late payments). This escrow arrangement is subject to reduction or elimination based on the licensee's credit rating, which creates an incentive for the licensee to achieve or maintain a rating that further mitigates the NBA's financial risk. In addition, Amazon committed to maintain a credit rating above investment grade, with the failure to meet this commitment giving rise to a termination right in favor of, and a related termination payment to, the NBA.

Turner Broadcasting System, Inc.
Attn: Luis Silberwasser
July 24, 2024
Page 3

In its purported match, TBS made multiple changes to these provisions of the Amazon Offer, including: (i) TBS effectively eliminated the escrow arrangement by inserting a new option in favor of TBS to provide the NBA with letters of credit as an alternative form of security; (ii) such letters of credit would be accessible by the NBA <u>only</u> when TBS first failed to make a rights fee payment on a timely basis (thereby adding delay before funds could be received by the NBA); (iii) the letters of credit could be "syndicated" from multiple banks (further lengthening the time and increasing the risk associated with drawing on them); (iv) TBS changed the credit ratings standard such that the NBA would not have the right to terminate if one of the premier rating agencies downgraded the company below investment grade; and (v) TBS reduced the amount of the termination payment. *See, e.g., Amazon Offer,* Sections 22(d), 26(b), 26(c), 26(d), 26(e), and 26(f).

- <u>Reach</u>. The Amazon Offer contains requirements intended to ensure that NBA game telecasts are distributed on a single, widely-available service that achieves and maintains substantial reach among potential viewers. These requirements include, but are not limited to, a minimum reach commitment (in terms of number of subscribers to the service) and a formula for measuring that commitment, as well as an obligation for such service to distribute certain other top-rated sports telecasts in addition to the NBA.

  In its purported match, TBS made multiple changes to these provisions of the Amazon Offer. Among other things: (i) TBS changed the minimum reach commitment by aggregating the subscribers to TNT and Max, rather than reaching the commitment through a single dedicated service as provided in the Amazon Offer; (ii) TBS changed the formula for measuring minimum subscribers by <u>including</u> subscribers who gain access to the service as part of a third-party bundle (and who historically have demonstrated a higher propensity to churn as compared to non-bundled subscribers), whereas such subscribers are expressly <u>excluded</u> from the formula under the Amazon Offer; and (iii) TBS changed the requirement that the service also show at least three other top-rated sports telecasts, by adding a new and ambiguous standard of "similar prominence and level of public recognition" as an alternative to the Amazon Offer's clear test of "at least three (3) non-NBA sporting event telecasts that are rated [by Nielsen] among the top 100 U.S. telecasts" annually. *See, e.g., Amazon Offer* Section 10(a).

- <u>Marketing/Promotion</u>. The Amazon Offer contains requirements relating to the marketing and promotion of NBA game telecasts intended to enhance viewership, revenue, and fan experience. In its purported match, TBS made multiple changes to these provisions.

  For example, the Amazon Offer includes the requirement of a robust initial marketing campaign, with executions and impressions to be provided in programming distributed by licensee's widely-distributed Internet-only streaming service – which itself is subject, as noted above, to a minimum subscriber requirement. In its purported match, TBS designated "each" of TNT and Max as a service authorized to distribute NBA games and related programming, allowing

Case 1:24-cv-09027-KPF     Document 51-2     Filed 08/25/25     Page 5 of 6

Turner Broadcasting System, Inc.
Attn: Luis Silberwasser
July 24, 2024
Page 4

either of these services to attempt to fulfill this marketing commitment. Neither of those services standing alone, however, satisfies the minimum subscriber requirement contained in the Amazon Offer, resulting in a significant loss of promotional value to the NBA. *See Amazon Offer*, Section 16(b).

Similarly, the Amazon Offer includes concrete commitments by licensee to promote NBA game telecasts in the United States during the first three years of the term. These commitments include promotion of the NBA in Thursday Night NFL Football telecasts on Prime Video – telecasts that have extraordinary reach. In its purported match, TBS struck this obligation entirely and substituted an obligation to promote the NBA in any "Major Sporting League" distributed on TNT or Max, a defined term which TBS expanded to include NASCAR and certain college sporting events – making this promotional commitment less valuable to the NBA. *See Amazon Offer,* Section 16(c).

- Highlights. The Amazon Offer authorizes NBA game highlights to be distributed only on the digital streaming service licensed to carry NBA games, the licensee's primary website and social media channels, and licensee-branded video-enabled devices. As TBS knows, the platforms on which highlights or any licensed content may be distributed are material elements of any sports media rights agreement. In its purported match, TBS broadened the highlights provision in the Amazon Offer considerably (for the significant commercial benefit of TBS) to include, among other platforms, Bleacher Report, House of Highlights, any TBS-branded application or service, and the social media channels of any licensee "affiliate." *See Amazon Offer*, Section 7(d).

The response made by TBS does not qualify as a Match under Exhibit C of the NBA/TBS Agreement. Because the Match Window has now expired, any right to match the Amazon Offer that TBS may have had under the NBA/TBS Agreement, including Exhibit C thereof, is now extinguished.

Sincerely,

*Bill*

William S. Koenig
President, NBA Global Content &
Media Distribution

Case 1:24-cv-09027-KPF    Document 51-2    Filed 08/25/25    Page 6 of 6

Turner Broadcasting System, Inc.
Attn: Luis Silberwasser
July 24, 2024
Page 5

cc:    Turner Broadcasting System, Inc., Gate Building, 1050 Techwood Dr. NW, Atlanta GA 30318, Attn: Legal Department for TNT Sports

Raph Poplock, SVP, TNT Sports (raphael.poplock@wbd.com)

Anthony Dinverno, VP Content Acquisitions, TNT Sports (anthony.dinverno@wbd.com)

Kevin Glidewell, SVP Legal, TNT Sports (kevin.glidewell@wbd.com)