# EXHIBIT 2

Confidential
Execution Version

## NBCUniversal - NBA U.S. Rights Agreement

This U.S. Rights Agreement (**"Agreement"**) dated as of the date of the last signature below (the **"Effective Date"**) confirms the agreement between, on the one hand, the National Basketball Association, as agent for its member teams, NBA Media Ventures, LLC, and NBA Entertainment, a division of NBA Properties, Inc. (collectively, **"NBA"**) and, on the other hand, NBCUniversal Media, LLC (**"Licensee"**) and, only with respect to Paragraph 1 of Section XVII, Comcast Corporation, the publicly traded corporation that is the ultimate parent of Licensee (**"Licensee Parent"**) with respect to the rights set forth herein. NBA and Licensee are each referred to herein as a "party" and collectively as the "parties".

For good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

| | | | |
|---|---|---|---|
| I. | **Term:** | 1. | 11 seasons commencing with the start of the 2025-26 NBA season through the end of the 2035-36 NBA season (**"Term"**). |
| II. | **Fees:** | 1. | Licensee shall pay to NBA the Annual Fees (as defined in Exhibit C). The schedule for Licensee's payment of the Annual Fees is attached hereto in Section 1 of Exhibit C. |
| | | 2. | The aggregate Annual Fees are inclusive of all rights set forth in this Agreement. |
| III. | **Territory:** | 1. | United States and its territories and possessions (**"U.S."**). |
| IV. | **NBA Live Games Rights Package (U.S.)** | 1. | **"Games"**: |
| | | | a. <u>Pre-Season</u>: Up to 2 Pre-Season games per season |
| | | | b. <u>NBA Season Tip-Off:</u> A doubleheader on the season tip-off, which shall take place in a Designated Window (as defined below) at the NBA's discretion (expected to be Tuesday) |
| | | | c. <u>Regular Season</u>: 100 Regular Season games per season (inclusive of the Season Tip-Off games), provided that such number of games will be reduced if Licensee does not have available programming windows to distribute 100 such games within the Designated Windows (but without prejudice to NBC's distribution obligations hereunder, and in any event such number will not be reduced to fewer than ▇ games), such games to be scheduled during the following windows by the NBA unless otherwise agreed by the parties (and subject to the terms of Section V and Exhibit A hereto): on (x) subject to Sections V and VI, Sunday nights during the NBA regular season and concluding on the penultimate Sunday night of each NBA regular season during the Term ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (y) Monday nights and select Monday afternoons during the NBA regular season (such Monday afternoons potentially including New Year's Day (in 2029), MLK Day, Washington's Birthday, and Veterans Day (in 2030)) (Licensee acknowledges that as of the Effective Date, NBA does not schedule games on certain Mondays (e.g., Monday following All Star Weekend, Monday of NCAA Championship Game and when New Year's Day is on a Monday)), and (z) Tuesday nights during the NBA regular season, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (collectively, such windows in the NBA regular season in which Licensee distributes a Game in any portion of the window in accordance with the terms |

Confidential
Execution Version

hereof, "**Designated Windows**" and each, a "**Designated Window**"). For clarity, the Designated Window will commence upon the start of the Game window (inclusive of the pre-game show) as set forth on Exhibit A, it being understood that the end of a game of another National Partner (as defined below) may, on occasion, overlap with the start of a Sunday night Designated Window.

d. <u>Playoffs – First Round and Conference Semifinals</u>: A minimum of (i) 15 guaranteed games and 8 scheduled 'if necessary' games across the First Round, and (ii) 7 guaranteed games and 4 scheduled 'if necessary' games across the Conference Semifinals, each per season. The ratio of First Round games as compared to Conference Semifinal games (accounting for "guaranteed" and "if necessary" games) will be consistent across all National Partners.

e. <u>Conference Finals</u>: All games from 1 Conference Finals series during 6 out of the 11 seasons during the Term, which shall comprise 1 Conference Finals series during each of the first, third, fifth, seventh, ninth and eleventh NBA seasons during the Term.

f. Christmas Day games and games on the last day of the regular season will not be part of Licensee's Game/Event package, regardless of the day of the week on which the holiday or such last day falls.

2. Other "**Events**":

a. <u>All-Star Weekend</u>: Each existing NBA All-Star Weekend event that is currently televised (i.e., Rising Stars, All-Star Saturday Night, All-Star Game and, if played, the HBCU Classic Game or replacement events), excluding Celebrity game.

b. <u>Other All-Star Events</u>: Licensee will have the right, but not the obligation, to create, distribute, and sell advertising and sponsorship rights (to NBA official marketing partners) to mutually agreed Licensee-conducted All-Star events (which, for clarity, shall be complementary to and not competitive with NBA fan events) during All-Star Weekend

c. <u>NBA Awards Show</u>: Licensee will have the right, but not the obligation, to produce and distribute the NBA Awards Show on NBC, an Authorized OTT Service (as defined below) or a mutually agreed other Authorized Licensee Platform each season. Licensee would be responsible for producing coverage of the event and telecast and both parties would mutually agree on the elements of the event. If Licensee chooses not to produce the NBA Awards Show after NBA's request to do so, then NBA may produce and/or distribute, or license a third party to produce and/or distribute, the event. If Licensee opts to produce and distribute (which it shall notify NBA prior to the start of the relevant NBA season), the parties will work together to identify a mutually agreed upon date for the NBA Awards Show.

3. <u>New Games/Events.</u> ███████████████████████████

| V. | Scheduling; Regular Season Team Appearances | 1. | <u>Schedule</u>: NBA will determine the national schedule of Games giving due regard to Licensee's preferences, ███████████████ |
|---|---|---|---|

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM

INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 4 of 60

INDEX NO. 653721/2024

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version



2.  **Flex Scheduling**: Once the schedule of games of National Partners has been established in accordance with the terms hereof, NBA will consider in good faith any request by Licensee to swap a game for another game taking place in the same Designated Window or a substantially similar window (i.e., in each case in terms of start time), subject in each instance to (A) whether Licensee has exhausted all appearance limitations for one or both of the teams participating in such a game, (B) Licensee requesting in writing to "flex" such a game at least two weeks before the scheduled date (provided the NBA will consider such request in good faith even if the request is made less than two weeks before the scheduled date) and (C) NBA's written approval, such approval not to be unreasonably withheld.

3.

4.  **Start Times**: Games/Events program window will be scheduled as set forth in **Exhibit A.** Prior to each season during the Term, NBA in consultation with Licensee will evaluate Game and Event start times. In the event of a conflict with any previously scheduled live sport telecast and/or premier non-sports programming (i.e., high-profile specials, awards shows, non-sports live events/specials, high-production value original series distributed in a consistent window that conflicts with a proposed start time) on NBC (which cannot reasonably be moved), upon Licensee's request NBA will in good faith consider modifications to the standard start times.

5.  **Regular Season Team Appearances:**

6.  **Regional Game Telecasts:**

Confidential
Execution Version



a. The parties acknowledge NBA's significant interest in maximizing television ratings for Games, in particular during primetime broadcast over-the-air television windows. Accordingly, and in furtherance of this significant interest, for each Tuesday Designated Window, as described on Exhibit A, Licensee shall distribute two (or more) games across different Licensee stations on a "**Regionalized**" basis (*i.e.*, distribute games on NBC in different regions of the U.S.) in accordance with the scheduling windows in Exhibit A or as otherwise mutually agreed to by the parties in such a manner that the ratings across the telecasts shall be cumulative in furtherance of NBA's interest described above.

b. For the purposes of the overall Game counts and team appearance limits described above, each Game distributed on a Regionalized basis will count as a separate Game (e.g., if 2 (or more) Games are distributed on a Regionalized basis, each of those 2 (or more) Games will count as Games).

**VI. Distribution (U.S.)**

1. NBC Games: Licensee shall distribute the following Games/Events live and in their entirety on the NBC broadcast network ("**NBC**"):

   a. Regular Season: (i) A season tip-off doubleheader (regardless of day of the week) (the "**Tip-Off Games**"); (ii) one or two primetime games on certain Sunday nights throughout the NBA regular season, which available nights shall be provided by Licensee during the scheduling process, and then scheduled by NBA in accordance with Section V above (it being understood that Licensee and NBA will work together to select nights and matchups to maximize reach of the Games and with the intent for Licensee to distribute at least 8 Games on Sundays during the NBA regular season) (the "**Sunday Primetime Games**"), it being understood that the Tip-Off Games and the Sunday Primetime Games will be prioritized in accordance with Section VI.1.b below and Licensee will take into account NBA's significant interest in broadcast over-the-air television ratings as described above; and (iii) and at least two Regionalized Games each Tuesday during the NBA regular season; ███████████████

   b. Clearances: Subject to the terms of this Agreement and any overlap/preemption (as set forth in Section VI.3), with respect to:

      (1) Tip-Off, Sunday Primetime Games, Playoff Games, All-Star Events and Other Games (other than Regionalized Games and Late Night Games): Licensee will (i) cause its owned and operated NBC stations ("**NBC O&O Stations**") to distribute the Tip-Off Games, the Sunday Primetime Games, and each playoff Game, All-Star Event and other Game to be televised on NBC; ███████████████

      (2) Tuesday Night Regionalized Games: Licensee will (i) cause its NBC O&O Stations within a Time Zone Region (as defined below) to distribute all Regionalized Games that are played in that Time Zone Region; ███████████████

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 6 of 60

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version



(3) █████████████████████████████████

provided, however, that:

(a) the foregoing Paragraphs (1) through (3) are subject to affiliate and distributor disputes and/or local programming of overriding public importance (e.g., breaking news, weather, local events);

(b) if, as a result of preemption due to local programming of overriding public importance (and, for clarity, not because of an affiliate or distributor dispute) ("Conflicting Programing") an NBC Affiliate Station or NBC O&O Station has advised Licensee that it will not broadcast (w) the Tip-Off Games, (x) the Sunday Primetime Games, (y) a playoff Game or All-Star Event to be televised on NBC, or (z) a Regionalized Game that takes place in the applicable region of the station and such station is located in the primary market of an NBA team participating in the Regionalized Game, then Licensee will provide notice to NBA of such fact 2 weeks in advance or otherwise as soon as practicable. If such Game is not a Side-by-Side Game in the applicable market, then Licensee may secure an alternate over-the-air broadcast station reasonably acceptable to NBA to distribute such Game in such market; provided that if Licensee fails to secure such an alternate over-the-air broadcast station(s) within a reasonable amount of time prior to the Game, then Licensee will notify NBA of such event and in any event, NBA may secure on its own alternative clearances in the affected market on another over-the-air station(s). In lieu of NBA securing such alternative clearances, at NBA's request, Licensee will provide a national feed of NBC for the affected Game to such station's distributors. For clarity, in any case, Licensee will cause any NBC O&O Station, and will use best efforts to cause any NBC Affiliate Station, to resume broadcast of any Game/Event that has been preempted due to Conflicting Programming but is still in progress as soon as such Conflicting Programming is completed (e.g., upon the conclusion of a breaking news report); and

Confidential
Execution Version

(c) ████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
███████████

For the purposes herein, "**Time Zone Region**" means each of (i) the area of the U.S. included in the Eastern and Central time zones, and (ii) the area of the U.S. included in the Mountain and Pacific time zones.

c. <u>Playoffs – 1st Round and Conference Semifinals</u>: At least 50% of all Games across the 1st Round and Conference Semifinals each year, ████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████

d. <u>Conference Finals</u>: All Conference Finals Games from 1 series during the seasons designated above, ████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ███████. For purposes of scheduling Conference Finals games, NBA will receive priority over all other sports and entertainment programming airing on NBC. Upon Licensee's request, the parties will work together to schedule such Conference Finals games in available windows.

e. <u>All-Star Weekend</u>:

   i.   All-Star Game

   ii.   All-Star Saturday Night

   iii.   Other All-Star Events (at Licensee's option)

   iv.   ████████████████████████████ ████████████████████████████ ████████████████████████████ ███████████

f. <u>Other Games/Events</u>: Licensee may distribute any other Game/Event on NBC at Licensee's option.

2. <u>Spanish-language</u>: In addition to the above, Licensee will distribute in Spanish the following Games/Events per season live and in their entirety as follows:

a. At least ██ Games (including the All-Star Game), in each case on the Telemundo linear network.

b. All Games/Events on Telemundo must also be distributed on the Authorized OTT Service(s).

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 8 of 60

c.  At Licensee's option (but without prejudice to the Telemundo and Authorized OTT Service obligations above), any such other Games/Events on Telemundo, Universo or an Authorized OTT Service.

d.  Licensee will distribute on the Authorized OTT Service(s) an SAP feed of each Game/Event telecast on NBC, provided that following each season of the Term, the parties will discuss in good faith relaxing this requirement based on relevant factors (e.g., performance metrics of the SAP feed).

3.  <u>Overlap/Preemption</u>: Other than Regionalized Games, if a Game that is otherwise scheduled to air on NBC (i) overlaps with (A) another Game scheduled to air on NBC or (B) the end of another major sporting event or other major live event (i.e., because it is running long) that Licensee is contractually committed to distribute on NBC prior to the scheduling of the Game, or (ii) is preempted by an emergency announcement or major breaking news then, as determined by the parties, one of the Games (in the case of two Games that overlap) or the Game (in the case of another major sporting event, emergency announcement or major breaking news) may be distributed live and in its entirety on (x) the USA Network (**"USA"**), (y) another broadly distributed Licensee cable network that is then-distributing all or substantially all other major sports and sporting properties to which Licensee holds rights (other than such content that is distributed exclusively on NBC or an Authorized OTT Service) (the "**Alternate Network**") or (z), with NBA's approval, another of Licensee's broadly distributed cable networks (collectively with USA and the Alternate Network, the "**Licensee Cable Networks**"). In the case of any of the foregoing, Licensee will notify NBA as soon as reasonably practicable and run a prominent crawl on NBC alerting viewers of the Game's availability on USA (or the applicable Licensee Cable Network). For all purposes of this Agreement (e.g., this overlap provision), at any time that (I) a Licensee Cable Network meets the definition of "Alternate Network" and (II) USA no longer distributes significant sports or sporting content (and/or is less broadly distributed in the U.S. than the Alternate Network), Licensee's obligations hereunder to distribute content on USA shall be deemed to be obligations to distribute on the Alternate Network.

4.  ███████████████████████

   a.

   b.  ████████████████████

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 9 of 60

Confidential
Execution Version



| | | |
|---|---|---|
| | |  |
| | **5.** | **MLK Day.** Licensee shall distribute at least 2 MLK Day games each NBA season if scheduled on such date by NBA, with the default distribution outlet being the Authorized OTT Service(s), but the parties will discuss in good faith expanded distribution opportunities (e.g., on NBC). |
| | **6.** | **HBCU Classic.** If NBA conducts the HBCU Classic, Licensee shall produce and distribute the Event in accordance with the terms hereof and on the following Licensee Authorized Platforms: (i) in 2026, 2030 and 2034 on the Authorized OTT Service(s) (on the most widely distributed tier or a Qualifying Tier (as applicable)); and (ii) during any other year, on the Authorized OTT Service(s) (on the most widely distributed tier or a Qualifying Tier (as applicable)) and on USA or the Alternate Network or, with NBA's approval, another Licensee Cable Network. If any other National Partner(s) also distribute the Event (in accordance with Section IX), such other National Partner(s) shall share pro rata Licensee's production costs. |
| | **7.** | |
| **VII. Production; NBA Tonight** | **1.** | **Production Responsibility:** Licensee will produce all Games/Events at its expense in English and, solely for the Games that will be distributed on Telemundo, in Spanish with Spanish language talent, i.e., not just an SAP feed (with additional languages to be discussed). Licensee will also produce shoulder programming ("**Shoulder Programming**") for each Game/Event (e.g., at a minimum, |

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 10 of 60

Confidential
Execution Version

pre/half/post-game shows), the format and length of such Shoulder Programming to be mutually agreed.

2. <u>Standards</u>: Licensee will produce all Games/Events consistent with NBA standards that are generally applicable and production innovations as agreed to by the parties as part of regular meetings. Licensee will select all talent, subject to meaningful consultation with the NBA and the NBA's approval of such talent at the time of retention, such approval not to be unreasonably withheld. The NBA will have the right to approve, such approval to be subject to NBA's customary process and practices (e.g., the "business review" process whereby NBA partners submit proposed marketing/promotional executions using NBA IP for NBA's review and approval), the use of NBA IP and innovation features. The parties will discuss in good faith evolving the production standards over the course of the Term with the aim of enhancing the viewing experience (e.g., personalization and new telecast technologies) and exploring different production paradigms (e.g., NBA taking over certain aspects of production). Any approvals needed from the NBA in connection with talent and use of NBA IP and innovation features pursuant to the above shall not be conditioned on the payment of any additional consideration.

3. <u>Live Feeds/Recordings</u>: Licensee will, at no cost to NBA, supply the NBA or its designee, in each case in a format reasonably requested by the NBA, with (i) any and all live feeds of each Game/Event, Shoulder Programming and Additional Programming telecast as requested by the NBA (e.g., broadcast feed, clean feed, individual camera feeds), although NBA acknowledges and agrees that (subject to "Releases" below) it may have to clear 3rd-party elements that Licensee has incorporated into such feeds for any uses of such feeds by NBA, and (ii) no later than twenty-four hours of the conclusion of the applicable Game/Event and Shoulder Programming, recording(s) of such Licensee's feeds as requested by the NBA.

4. <u>Releases</u>: Licensee, at Licensee's sole expense, will obtain all rights, releases, waivers and other clearances from its talent, employees, agents and subcontractors (collectively, "Personnel") necessary to enable the NBA and its affiliates to use, worldwide and in perpetuity, in any media now known or hereafter developed, the results and proceeds from any such Personnel's performance in the Games, Events, Shoulder Programming and Additional Programming in any manner that is not inconsistent with this Agreement without NBA incurring any obligation to any such Personnel (e.g., no guild residuals, etc.). In addition, Licensee shall use commercially reasonable efforts to obtain all rights, releases, waivers and other clearances from other third parties necessary to permit NBA to distribute and use by any means worldwide, in perpetuity, each Game/Event, Shoulder Programming, although NBA acknowledges that third party material (e.g., music, third party footage) may not be cleared for NBA's use, and in such cases, (i) Licensee will advise NBA as to the status of such clearances prior to its distribution of such material and (ii) provide NBA with a dirty feed of such content that excludes such material that is not cleared for NBA's use.

5. <u>Copyright</u>: NBA will own the exclusive worldwide copyright in all Game/Event telecasts, Shoulder Programming and Additional Programming (as defined below) produced by Licensee or licensed to Licensee for distribution hereunder and may exercise all rights with respect to such content except to the extent prohibited by the exclusivity provisions of this Agreement. Licensee will irrevocably transfer and assign to the NBA or its designee, as applicable, any and all of its copyright and other property rights and interests in all aspects of all such content (including a perpetual, worldwide, royalty-free right to use all Licensee trademark and other IP rights contained therein (as they are so incorporated therein)). Licensee agrees, and shall use its best efforts to ensure, that Licensee's production of all such

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM    INDEX NO. 653721/2024
NYSCEF DOC. NO. 87    Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 11 of 60    RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9    RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

content shall constitute a "work made for hire" for NBA or its designee, as applicable. If it is determined by a court or other legal or administrative body of competent jurisdiction that any such content distributed by Licensee is not a "work made for hire" for the NBA or its designee, as applicable, this paragraph shall be deemed sufficient to irrevocably assign to the NBA or its designee, as applicable, all right, title and interest that Licensee may have in and to such content.

6. <u>Alternate Telecasts:</u> Licensee will have the right, but not the obligation, to produce and distribute alternate telecast feeds for all Games/Events on any Authorized Licensee Platforms and/or such other platforms approved by NBA; provided that Licensee will (i) discuss in good faith producing and distributing alternate telecasts for certain mutually-agreed Games/Events (e.g., Tip-Off, the All-Star Game) and (ii) give good faith consideration to distributing via an Authorized OTT Service and/or any other Authorized Licensee Platforms any alternate telecasts produced by NBA and provided to Licensee for distribution, and Licensee will retain all commercial inventory in such telecasts (except, for clarity, for the units reserved in each Game telecast for NBA's institutional use under Section I.C of Exhibit B) and the other sales rules herein shall apply to alternate telecasts. The concept and talent in connection with any alternate telecast will be subject to NBA's reasonable approval.

7. <u>NBA Tonight:</u>

   a. <u>"NBA Tonight"</u> will be a new ancillary programming block



   c. If produced by either party, Licensee and NBA will have co-exclusive rights to distribute NBA Tonight. If Licensee chooses to distribute (and it shall have the obligation to distribute if Licensee produces), it will do so on the Authorized OTT Service(s) and, at its election, any other Authorized Licensee Platforms. The NBA's distribution on such nights will be via NBA.com, NBA's official and primary app, and such other NBA platforms approved by Licensee, but for clarity, not on NBA TV, League Pass and/or any social media platform.

   d. The producing party will provide the other party with a fully produced feed of "NBA Tonight" for its distribution as contemplated above. If produced by NBA, Licensee, at its expense, may customize such NBA production of NBA Tonight feed by adding graphics and collaborating on guest appearances, subject to NBA's reasonable approval over customization elements.

   e.

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 12 of 60

Confidential
Execution Version



f.

8. Game cut-ins (which may be included in NBA Tonight and telecasts of Games and Shoulder Programming) must comply with the following:

   a.

   b. No more than ▉ cut-ins may be from any one game (or any part thereof). Except for a cut-in from the ▉▉▉▉▉▉▉▉▉▉ quarter, no cut-in may be longer than ▉ minutes (real time)

   c. Cut-ins must be non-consecutive

   d. Only ▉ cut-ins may be taken prior to ▉▉▉▉▉▉▉

   e. No cut-in is permitted if ▉▉▉▉▉▉▉▉▉▉▉ except for either:

      i. ▉ cut-in may occur prior to ▉▉▉▉▉▉▉▉▉▉; **or**

      ii. ▉ cut-in may occur during ▉▉▉▉▉▉, which may extend through the end of the game (including overtime)

   f. All cut-ins must include the following:

      i. An oral "courtesy" to the announcers of the game during the cut-in;

      ii. A visual "courtesy" to the television service distributing the game that is being cut into every ▉ minutes (real time); and

      iii. A visual "courtesy" to the television service distributing the game that is being cut into during NBA Tonight or other applicable Game or Shoulder Programing telecasts' closing sequence.

| | |
|---|---|
| **VIII. Sports Betting** | 1. Licensee will have the right to integrate betting content (e.g., editorial storylines, odds and lines) and advertising/sponsorship elements in or around live Game and Event telecasts on any Authorized OTT Service and other Authorized Licensee Platforms (other than Universal Kids), and such other platforms that NBA has approved, it being understood that the inclusion of such sports betting content/elements is subject to the following:<br><br>    a. With respect to primary (i.e., not sports betting-focused) Game and Event telecasts, such content/elements must either (i) comply with league rules as referenced in Exhibit B (which may be updated from time to time and |

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM

INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 13 of 60

Confidential
Execution Version

| | |
|---|---|
| | delivered to Licensee in writing (email sufficing), or (ii) be agreed to by the parties.<br><br>b.  If Licensee elects to make any sports betting content/elements available to viewers/users of an Authorized OTT Service or other Authorized Licensee Platforms which otherwise do not comply with the league rules referenced in Exhibit B (as such rules may be updated by NBA from time to time), then both the user/viewer election mechanism utilized to access or view such sports betting content/elements (i.e., the functionality or other means used by Licensee to determine a viewer/user's desire to access such sports betting content/elements) and such sports betting content/elements themselves will be subject to NBA's reasonable approval (it being understood that certain of the league rules as referenced in Exhibit B (which may be updated from time to time and delivered to Licensee in writing (email sufficing) will continue to apply – e.g., no sports betting operator may be promoted unless it is an Authorized Gaming Operator). For clarity, neither betting content that is integrated into a Game or Event telecast or betting advertising/sponsorship elements sold within or against a primary Game or Event telecast that, in either case, comply with league rules referenced in Exhibit B shall be subject to the previous sentence.<br><br>c.  With respect to sports betting related alternative telecasts, sports betting integrations may exceed those permitted by league rules set forth in Exhibit B, but such elements shall be as mutually agreed by the parties.<br><br>d.  In no instance may such sports betting content/elements include any functionality that allows a consumer to place a bet or wager unless otherwise approved by NBA in writing (for clarity, an ad that includes a link to a sports betting operator's platform that is separate and distinct from an Authorized OTT Service or Authorized Licensee Platform (as applicable) and does not itself include any betting functionality and otherwise complies with this Agreement and/or league rules is not prohibited by the restriction in this sentence). |
| **IX. Grant of Rights / Exclusivity / Reserved Rights (U.S.)** | 1.  <u>Grant of Rights</u>:  Subject to the limitations, terms and conditions, and minimum requirements set forth herein, and in addition to the other rights provided herein (e.g., highlight, archive, replay and recap, and VOD rights), NBA hereby grants Licensee the right, within the U.S., to produce and distribute the Games/Events, Shoulder Programming and Additional Programming (as applicable) in all languages on a live/near-live, full-length basis, in any and all formats, means and methods of visual and audiovisual media distribution solely through Licensee-owned, -controlled or-branded (x) networks or (y) other platforms (including, without limitation, the Authorized Licensee Platforms), and (z) such other distribution outlets as authorized under this Agreement, in each case via all business models (including commercial establishment) and devices, in each case, whether now known or later developed. No rights granted hereunder may be sublicensed to any other entity; it being understood that the foregoing restriction on sublicensing shall not be deemed to restrict the distribution, licensing or authorization (e.g., via "retransmission consent") of any Authorized Licensee Platforms, including the content licensed hereunder to the extent authorized hereunder, (i) to distributors of any Authorized Licensee Platforms (including through, without limitation, MVPDs, vMVPDs, and Channels stores), provided that any such distributor/access point (e.g., Channels store) is required to distribute any such Authorized Licensee Platform in its entirety (other than a Front Porch or Add-On Programming Service, |

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM

INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 14 of 60

INDEX NO. 653721/2024

RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

as such terms are defined below) — e.g., no "white-labeling" of certain content (including NBA content) available on such distributor/access point; (ii) solely in the case of NBC-affiliated broadcast stations, to such broadcast stations in the U.S. for its or their licensing or authorization of distribution of NBC in its entirety to distributors, and (iii) to commercial establishments (**"Licensed Distribution Means"**).

2. For clarity, Licensee may not distribute on a Front Porch or Add-On Programming Service (other than the Qualifying Tier) any Game or Event (either on a live basis or as a replay), Shoulder Programming or Additional Programming (or any Game/Event recap) or, unless otherwise approved by NBA, any Game/Event highlights. Notwithstanding the foregoing, nothing herein will limit Licensee's right to include Games/Events, Shoulder Programming and Additional Programming as part of an Add-On Programming Service (e.g., a Licensee Linear Network) if such Add-On Programming Service is also an Authorized Licensee Platform that is authorized by this Agreement and is made available in its entirety and in accordance with Section IX.1 above and this Agreement. For the purposes of this Agreement, (i) **"Front Porch"** means, solely with respect to an Authorized OTT Service, a free section thereof that includes a small offering of content available to users who do not have access to any other tier of such Authorized OTT Service, and (ii) **"Add-On Programming Service"** means, solely with respect to an Authorized OTT Service, an additional content offering that is offered as an add-on to such Authorized OTT Service.

3. Exclusivity:

   a. Live/Near Live Basis: Except as Licensee and NBA may otherwise agree, or except as indicated below, Licensee will have the exclusive right and obligation to distribute the Games, Events and Shoulder Programming licensed to it under this Agreement and on a live and near-live, full-length basis within the U.S., except for the following:

      i.

      ii.

      iii.

      iv.

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 15 of 60
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version



    v.

    vi.

    vii.

b. **Replays:** For any Game, immediately following the applicable Designated Window and until ▮▮▮▮▮▮ Eastern Time following the conclusion of the initial airing of such Game/Event/Shoulder Programming (the "**Exclusive Replay Window**"), Licensee will have the exclusive right within the U.S. to replay the Games, Events and Shoulder Programming on a full-length basis via any Licensed Distribution Means in the U.S, it being understood that the local team playing in such Game may replay (and/or authorize its local RSN or other local telecaster to replay) a Side-by-Side Game during the Exclusive Replay Window solely within the applicable team's local territory. Licensee's replay rights shall include the right to make available any full-length Game, Event, or Shoulder Programming on a VOD basis, provided that the available window with respect to such VOD rights shall be until the end of the then-current season in which such Game, Event or Shoulder Programming is first made available. For clarity, after the Exclusive Replay Window, NBA will retain the right to license or distribute Games/Events and Shoulder Programming on NBA TV and/or elsewhere on a full length or other basis, but at all times at least as favorable as the conditions and limitations related to NBA's replay/other exploitation of NBA games and such other content of all other National Partners, in each case applied on a uniform and consistent basis (e.g., as of the Effective Date, (x) holdback until ▮▮▮▮▮▮ the following day after the conclusion of a Game before it is made available on a VOD basis within League Pass or (y) a ▮▮▮▮▮ holdback after the conclusion of a Game before it is licensed as a replay to a third party). For clarity, all delayed distribution rights afforded to Licensee hereunder are subject to the same distribution limitations applicable to the live content licensed hereunder (e.g., distribution outlets, no sublicensing).

4. <u>Other National Partners.</u>

    a.

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 16 of 60

Confidential
Execution Version



Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 17 of 60

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version



**5.** <u>Other Games/Packages</u>: NBA will not license or exhibit (or authorize the exhibition of) NBA games on a national, live/near-live basis, within a Designated Window, including in any Game/Event window in the U.S. during the Regular Season or Playoffs

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9
Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 18 of 60
INDEX NO. 653721/2024
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

████████████████████████████ Notwithstanding anything to the contrary in this Agreement, NBA may distribute and/or license (i) NBA games or events on a national, live basis as part of NBA League Pass (or its successor) (**"League Pass"**), provided that except as set forth herein, in the U.S., (w) NBA League Pass will not include any of Licensee's Games/Events or Shoulder Programs (in each case on a live/near-live basis), (x) League Pass shall be offered as a standalone, premium product with a discrete, non-de minimis fee (for clarity, the foregoing does not restrict NBA's current practice (e.g., free previews/free trials, single/partial game transactions, League Pass bundling such as, for example, a bundle of League Pass and NBA TV), (y) NBA will not license, distribute or market League Pass as a substitute or alternative for Licensee Games/Events or in a manner intended to circumvent the limitations set forth in Section IX.4 (Other National Partners) above, and (z) any live/near-live League Pass games will be available on an out-of-market basis (i.e., blacked out in the local and (if applicable) extended market territories of the participating teams in accordance with NBA rules of uniform application); and



6.  <u>PIT and NBA Cup</u>: For clarity, no PIT or NBA Cup (pool play or "knockout") games are included in the Game package. For clarity, a limited number of NBA Cup games may occur on Sunday, Monday or Tuesday within what is typically a Designated Window and be distributed by another National Partner ████████████████████ it being understood that Licensee's schedule would not include Games during such windows and Licensee will still receive all of its Games under this Agreement.

7.  <u>Immersive; Watch & Bet</u>: ████████████████

8.  <u>NBA "Front Door"</u>: Licensee will work with NBA to include a direct link to the applicable Licensee distribution platform (e.g., an Authorized OTT Service, One

Confidential
Execution Version

App for Games/Events distributed on NBC or another Licensee linear network as authorized hereunder) for all Game/Events across all NBA -owned, -controlled and -branded platforms (e.g., NBA.com and NBA App), with the goal of providing seamless navigation to a transaction page (e.g., to purchase a subscription to an Authorized OTT Service, watch a Game).

**X. Digital Content; On-Ramp; Data**

1. <u>Highlights and Recaps.</u>

   a. <u>Licensee Rights:</u> Licensee will have non-exclusive rights to distribute in-progress and post-game highlights on a "stand alone" basis on such Authorized Licensee Platforms that are distributing Games/Events during the then-current season and Other Licensee Platforms (as set forth on Exhibit D and subject to the limitations contained therein), and to monetize consistent with the attached Exhibit B. A "stand alone" basis means highlights not presented in conjunction with or incorporated into any other content (e.g., non-game content, other game highlights), it being understood that the foregoing will not restrict non-video elements that would customarily accompany a highlight post (e.g., a written caption accompanying a highlight). Licensee's ability to distribute such highlights is subject to the following, as applicable:

      i. Stand-alone NBA highlight distribution (i) must be in a "multisport" environment (i.e., including at least ▮ other Major Sports to which Licensee holds rights, it being understood that such requirement can be met by Licensee's having separate sport-specific "hubs" for each such sport (in addition to NBA) within such environment) and (ii) may not exceed ▮▮ of the overall sports content offering on the applicable Authorized Licensee Platform or Other Licensee Platform

      ii. <u>In-progress:</u> ▮▮▮▮▮▮▮▮▮▮ Up to ▮ minutes of in-progress highlights for other games/events (other than any game telecast by another National Partner, with respect to which no in-progress highlights are permitted). Limitations on temporal occurrence of in-progress highlights will be consistent with those imposed upon other National Partners (e.g., limits on amount of in-progress highlights per half, during ▮▮▮▮▮▮▮ of a game and in overtime). Subject to technical feasibility and platform/contextual considerations or limitations discussed in good faith between the parties (e.g., a platform whose algorithm disfavors the surfacing of content that contains external links), in-progress highlights on such Authorized Licensee Platforms and Other Licensee Platforms will include context-appropriate tune-in messaging (inclusive of a hyperlink to Licensee's applicable distribution platform) and be used to promote Games/Events

      iii. <u>Post-game:</u> ▮-minute cap on each Game/Event and ▮ minute-cap on all other NBA games, or in each case such greater amount that NBA authorizes for any other National Partner ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on the same terms and conditions, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, except that Licensee may exploit highlights of its own Games/Events on such Authorized Licensee Platforms, as authorized by this Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 20 of 60

Confidential
Execution Version



    iv.  Distribution of highlights will be subject to a distribution plan proposed by Licensee on an annual basis, subject to NBA approval, which shall include, without limitation, "on-ramp" mechanisms as described below, volume, cadence and appearance of tune-in messaging

b.  <u>News and Information Programming</u>: Licensee may incorporate post-game highlights from a game or event (including, but not limited to, a Game or Event) into Licensee news and information programs (e.g., Today Show) on Authorized Licensee Platforms; provided that no more than ▌ of highlights may be incorporated into any individual program unless otherwise agreed to by NBA. The foregoing is without prejudice to the ability of news and information programs to utilize highlights pursuant to the terms of NBA's standard Highlights License. In addition, Licensee may (but solely in good faith and without intending to circumvent the requirements of this Agreement) distribute any segments from the applicable Licensee news and information programs on Other Licensee Platforms inclusive of the post-game highlights provided that such highlights will not be distributed on a "stand alone" basis.

c.  <u>Entertainment and Other Programming</u>:



d.  ▌

e.  The parties will work together to identify opportunities for Licensee to start distributing certain highlight rights across Licensee networks and platforms

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
NYSCEF DOC. NO. 87

INDEX NO. 653721/2024

RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 21 of 60

Confidential
Execution Version

during the 2024-25 NBA season, which, if mutually agreed, will be subject to a separate agreement between the parties.

f.  <u>NBA/Third Party Highlight Rights:</u> During the playing of any Game or Event, NBA and its teams will have non-exclusive rights to distribute on their NBA- or team-branded (as applicable) and owned or operated platforms, and to authorize networks distributing Side-by-Side Games, and news and information services pursuant to the terms of NBA's standard Highlights License, uniformly applied across all such services, to distribute in-progress highlights of Games/Events as follows:

i.

ii.  Subject to technical feasibility and platform/contextual considerations or limitations discussed in good faith between the parties (e.g., a platform whose algorithm disfavors the surfacing of content that contains external links), in-progress highlights on NBA branded and owned or operated platforms as described above will include context-appropriate tune-in messaging (inclusive of a hyperlink to Licensee's applicable distribution platform) and be used to promote Games/Events.

g.  Notwithstanding NBA's and its team's rights to distribute (and authorize /license third parties the right to distribute) highlights of the Games/Events (but for clarity, subject to the limitations on in-progress highlights above), NBA will not authorize to be marketed or distributed, nor will NBA itself market or distribute, any in-progress and post-game highlights and recaps from a Game within the applicable Exclusive Replay Window in a manner intended as a substitute for watching the applicable Game/Event on Licensee's platforms.

2.  <u>NBA Innovation:</u>  Commencing as of the Effective Date and throughout the Term, NBA commits to make a significant annual investment to (i) innovate with respect to NBA game telecasts and related NBA programming and (ii) grow the game of basketball on a global basis.

3.  <u>Interactive Features/Innovation:</u> Without limiting the foregoing provision, the parties will use commercially reasonable efforts to innovate with respect to the Game/Event telecasts and discuss potential new features throughout the Term. Subject to reasonable NBA approval, Licensee will have the right to enable interactive features for Games/Events to enhance the customer viewing experience. The following features are pre-approved (so long as they do not interfere with viewer experience of the Games/Events), subject to meaningful consultation with NBA on implementation on NBA content:

- Interactive statistical overlays

- Interactive replay selection within game overlays

- Alternate camera angles (e.g., single-camera feeds of players)

The parties agree that the following innovation and interactive features, as well as any future features, must be approved by the NBA in each case:

- Integrations that include interactivity and shoppable functionality

Confidential
Execution Version

|  |  | <ul><li>Betting integrations (other than the betting content as described above)</li><li>Alternate feeds</li></ul>It is understood and agreed that Licensee's current productions are made available in no less than 1080pHDR (or other established industry standards), subject to specific requirements for formatting, archive or distribution, and such standards at a minimum (or any higher standard in the future that Licensee applies to its production of season-long NFL games (or, if Licensee does not hold rights to the NFL, its most high-profile sports programming other than the NBA, it being understood that the foregoing will not be triggered by an occasional "stunt" that features higher-than-standard production values, e.g., "the Super Bowl in 8K, brought to you by [X]") shall be applicable to its production of all Games and Events. The parties agree that Licensee will also work together (but subject to the requirements of the foregoing sentence) to explore integrating the following elements:<ul><li>Select Game/Event productions in 4K and any other future state-of-the-art format.</li><li>At Licensee's option, innovations and enhancements developed by the NBA for its Game/Event telecasts, provided that Licensee will use commercially reasonable efforts to so integrate.</li></ul> |
|  | 4. | <u>On-Ramp.</u> To drive viewership of NBA game and event telecasts, NBA and Licensee will work to facilitate an "on-ramp" that enables viewers of in-progress game/event highlights made available by Licensee and NBA to access the full in-progress game telecast (e.g., via a click-through, deep link or other platform-specific option) on Licensee platforms (for clarity, subject to the limitations herein). To the extent the platforms on which such highlights are distributed do not make available the functionality to facilitate such an "on-ramp," Licensee and NBA will jointly approach the platforms to develop and implement such functionality as soon as possible during the Term (the parties will discuss how to cause such platforms to implement such functionality). |
|  | 5. | <u>Data:</u> The data sharing rights and obligations of each party with respect to the U.S. are set forth in Exhibit E to this Agreement. Licensee hereby represents that the data sharing rights and obligations set forth herein and in Exhibit E are at least as favorable to the NBA as the data sharing rights and obligations of any other major U.S. sports league (and/or its affiliate) under any current agreement between Licensee and such sports league (and/or its affiliate). |
| XI. **Additional Programming; Other Content Opportunities** | 1. | Licensee will have the right (but not the obligation other than with respect to Shoulder Programming) to produce ▮▮▮▮▮ of original NBA-related programming each year ("**Additional Programming**") to engage fans (e.g., originals/docuseries, weekly ancillary shows, etc.) at no additional license fee payable to NBA (for clarity, other fees may apply — e.g., standard search and edit fees for footage requests, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subject to the applicable terms and restrictions hereof relating to Game/Event distribution, and NBA's standard approval processes related to ancillary content, Licensee may distribute such Additional Programming on any Authorized Licensee Platforms, in each case via any Licensed Distribution Means, subject to the parties mutually agreeing on specific elements of any such Additional Programming. |
|  | 2. | Licensee will have the right, but not the obligation, to produce ▮▮▮▮▮▮▮▮▮▮ for distribution on any Authorized Licensee Platforms or such other service or platform approved by NBA (at Licensee's option), in each case via any Licensed Distribution Means, subject to the parties mutually agreeing on specific |

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 23 of 60

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

| | |
|---|---|
| | elements of the program. If produced, ▮▮▮▮▮▮▮ will be deemed "Additional Programming". |
| | 3. <u>NBA Archives</u>: NBA to provide Licensee with access to the NBA archive for the purpose of distributing mutually agreed to content on any Authorized Licensee Platforms and/or such other service or platform approved by NBA. Licensee and the NBA to mutually agree on delivery process and programming plan with respect to such content. The archive includes the following:<br><br>   a. <u>Documentaries / Home Videos</u>: ▮▮▮▮▮▮ of long form content (e.g., NBAE-produced documentaries and home videos)<br><br>   b. ▮▮▮▮ <u>and Other Shows</u>: A minimum of ▮▮▮▮▮ of other NBAE produced shows ▮▮▮▮▮▮▮▮▮▮▮<br><br>   c. <u>Game Archives</u>: A minimum of ▮▮ Finals, Playoffs and Other Classic Games ▮▮▮▮▮<br><br>4. Subject to NBA rules/guidelines, Licensee will receive (i) a minimum of ▮ dedicated on-site access credentials for its social-digital producers for Games/Events and (ii) inclusion on media circuits at all tentpole events (including non-Events) for distribution on approved digital platforms. |
| **XII. Advertising / Sponsorship** | 1. The general rights and obligations for the sale of advertising and sponsorship positions in NBA game telecasts, programs, content and highlights, subject to NBA standards, are set forth in <u>Exhibit B</u>. |
| **XIII. Marketing and Promotion** | 1. **Marketing Commitment to NBA**: Licensee will provide an annual promotional plan for the promotion of the Game telecasts and other content licensed hereunder (the "**Marketing Plan**"). Such plan shall include at least the below executions. For clarity, all promotional executions (including those contemplated in this Section) that use NBA IP are subject to NBA's standard approval process set forth in the Standard Terms and Conditions attached hereto.<br><br>   a. **"Coming to NBC"**: Commencing with Licensee's coverage of the 2024 Olympic Games and until the commencement of the 2025 NBA season, Licensee will conduct a robust marketing campaign across NBC and the Authorized OTT Service(s) (and other Authorized Licensee Platforms) to promote the content licensed hereunder to maximize viewership, revenue and fan experience, and inform viewers of the return of the NBA to Licensee.<br><br>   b. **NBC Broadcast Network (and Telemundo Broadcast Network as applicable)**:<br>     i. Licensee will promote tune-in to the content licensed hereunder (with a focus on NBA Games/Events) using drop-ins, promo units, lower-third messaging and/or audio/graphic mentions during Licensee's coverage of marquee sports properties, in coordination with the NBA in each case, and including, without limitation:<br>       A. Sunday Night Football and 2026, 2030 and 2034 Super Bowl games or comparatively rated shows (if any) (minimum of 1 promo/game)<br>       B. the Olympic Games and Olympic Winter Games<br>       C. Big Ten football and basketball games (including the 2026 Big Ten Football Championship Game)<br>       D. Kentucky Derby<br>       E. Premier League<br>       F. FIFA World Cup |

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9
Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 24 of 60
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

       G. NASCAR

ii. Licensee will include promotional units to promote tune-in to NBA Games/Events (e.g., the NBA Playoffs) in Licensee's coverage of the following sports events taking place between April 15 and May 31: Kentucky Derby, Premier League, PGA Tour, and Preakness), in each case to promote the then-occurring NBA Playoff Games

iii. Licensee will develop a cohesive promotional plan to promote tune-in to NBA Games/Events using drop-ins, promo units, lower third messaging and/or audio/graphic mentions in Licensee's news and entertainment programming, but Licensee shall promote, at minimum, in the following assets:

    A. Today Show/Weekend Today

    B. Tonight Show or another major NBC late night show approved by the NBA

    C. Licensee primetime

    D. Thanksgiving Day Parade or another major NBC non-sporting event approved by the NBA

    E. Thanksgiving Day National Dog Show

    F. New Year's Eve Special and Awards Shows

c. **Licensee Cable Television Services/Peacock/Digital Platforms:**

i. Licensee will promote NBA Games/Events using drop-ins, promo units, lower-third messaging and/or audio/graphic mentions during Licensee's coverage of marquee sports properties on the applicable platforms in coordination with the NBA in each case, including, without limitation:

    A. Properties listed above (as applicable)

    B. WWE Smackdown

    C. A10 college basketball

ii. Licensee will create an NBA-branded hub on the Peacock home page for all Games and related content (subject to NBA approval of the use of NBA IP and the other applicable terms of this Agreement, e.g., ▮▮▮▮▮ and Licensee having separate sport-specific "hubs" for each Licensee-licensed sport on such home page)

iii. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

d. **"Symphony":**

i. Licensee will provide marketing across the Licensee ecosystem each year to promote the NBA Games/Events, which shall, at a minimum and without limitation, include the following elements:

    A. A national broadcast marketing campaign on NBC during its primetime programming

    B. Mutually agreed integrations into Licensee's morning and late-night shows (e.g., Today Show, Tonight Show)

    C. Advertising and promotion during Licensee's other major sports telecasts, including NFL games

    D. Authorized OTT Service advertising units

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM

INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 25 of 60

RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

E. Units across Licensee's then-existing family of networks (e.g., Bravo, Telemundo, Universo, Oxygen, E!, USA, Syfy).

F. Units across other Licensee digital channels, including NBCSports.com and Fandango

G. Licensee and NBA will agree to a marketing and promotional plan for the first year of the new Term. Licensee and NBA marketing executives will meet regularly (e.g., quarterly) to review results and to align on priorities and KPI/goals, media planning, testing opportunities, and measurement solutions. Each subsequent year's plan will be based on the prior year's plan, as adjusted by input from such meetings.

   e. Additional Marketing:

     i. Promote and market the Games across Licensee's Universal theme parks in the U.S., with specific executions at NBC Sports Grill & Brew, and Xfinity Live!, in coordination with the NBA in each case

     ii. Licensee and NBA work together to identify opportunities to utilize SportsEngine for any NBA-managed youth-centric events/initiatives.

     iii. Licensee and NBA to work together to create NBA-centric programming and host NBA players at the American Century Championship golf event.

2. Licensee will promote NBA games and events distributed by each National Partner (e.g., within Game telecasts).

3. Without limiting any of its promotional commitments set forth in this Section, each Year, the Annual Fee paid by Licensee includes an "Annual Marketing Payment" as set forth on Exhibit C (each, an "**Annual Marketing Payment**"). NBA shall use a portion of the Annual Marketing Payments, together with its own marketing expenditures, on marketing and promotional inventory (e.g., the purchase of advertising time), innovation, research and initiatives (e.g., marketing campaigns aimed at attracting college basketball fans) in order to promote tune-in to Games and other NBA games and event telecasts and to attract new fans to NBA basketball.

4. NBA Membership and Benefits:

   a. Licensee and NBA will work in good faith to enable NBA ID benefits on nbcsports.com and such other digital services and platforms that are authorized to distribute Games/Events under this Agreement in sections that include other NBA content (e.g., All-Star fan voting, exclusive video highlights) by allowing users to sign-in or register for an NBA ID in such section, with the timing and specifics of the technical integration to be mutually agreed, in each case subject to Licensee's terms of service and privacy policies.

   b. The parties will work together in good faith to identify and provide mutually agreed benefits from the Licensee and NBA portfolios of assets ███████ ███████████████████████████████████████████ ██████████ to their respective members for the parties' mutual benefit.

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 26 of 60

Confidential
Execution Version

| | |
|---|---|
| | 5. NBA to provide, at no cost, Licensee with rights (subject to standard NBA approval rights) to use NBA-related materials in connection with Licensee's production, promotion and marketing of the content package, including (i) highlights/photos and video footage ██████████████ ████████████ (ii) NBA and team name and logos; (iii) image and likeness rights of all players, (iv) as part of social media and branding executions (e.g., "NBA on [____]"), and (v) such other uses to be mutually agreed upon by the parties. Any Licensee promotion or marketing of the content licensed hereunder will be subject to NBA standard approval rights. |
| **XIV. Tickets** | 1. Each NBA team will provide Licensee, upon Licensee's request to NBA, with █ tickets for "best available" seats for each Game and Event. In addition, if requested by Licensee, on a "best efforts" basis, NBA agrees to provide Licensee with up to █ additional tickets for "best remaining" seats for each Game and Event. NBA will provide Licensee with ████████ tickets to each All-Star Weekend event. |
| **XV. Minimum Reach / Other Sports Commitments** | 1. Licensee shall ensure that either (i) NBC or (ii) the tier(s) of any Authorized OTT Service that distribute Games/Events (for clarity, each of NBC and any Authorized OTT Service individually, and not the aggregate of NBC and any Authorized OTT Service, and excluding any Front Porch or Add-On Programming Service) <br><br> a. is viewed by at least ████████████ ████████████████████ <br><br> b. ████████████████████ <br><br> For purposes hereof: <br><br> i. ████████████████████ |

Confidential
Execution Version



| | | |
|---|---|---|
| | ii. | **"Major Sports"** means (1) the Women's National Basketball Association, (2) the National Football League, (3) Major League Baseball, (4) the National Hockey League, (5) professional golf (i.e., PGA Tour or any of the four men's "major" championships), (6) NASCAR, (7) Indy Car racing series, (8) college basketball (including Division I men's college basketball or successor(s)), (9) college football (including Division I men's college football or successor(s)), (10) professional soccer (such as Major League Soccer or Premier League), (11) professional tennis (i.e., ATP, WTA or any of the four "major" championships), (12) professional boxing, (13) mixed martial arts (e.g., UFC), and (14) Olympic Games. |
| | 2. | ███████████████████████████████ |
| **XVI. Change of Control** | 1. | If, during (or prior to) the Term, there occurs a Change of Control (defined below) that NBA has not consented to in advance, then NBA may, without limitation of any other remedies available to it, terminate this Agreement (X) immediately upon notice; or (Y) also upon notice, effective at the end of the then-current or upcoming NBA season. |
| | 2. | **"Change of Control"** means the occurrence of any one of the following events: (i) any "person", as such term is used in Sections 3(a)(9) and Section 13(d) of the Securities Exchange Act of 1934, as amended, or group of "persons" (or their stockholders) becomes a "beneficial owner", as such term is used in Rule 13d-3 promulgated under that Act, of ████████ of the capital stock having voting power to elect the directors of Licensee or Licensee Parent, other than, in the case of Licensee, Licensee Parent, any "person" that is directly or indirectly controlled by or under common control with Licensee Parent or any "person" that acquires control of Licensee Parent where, immediately following such acquisition, such "person" is owned by the same shareholders that owned Licensee Parent immediately prior to such acquisition; (ii) ████████████ the assets or business of ████████████████████████ are disposed of pursuant to a sale, merger, consolidation, spin-off, split-off or other transaction (unless Licensee Parent continues to control the entity or entities, if any, that succeed to the business of ████████████████); (iii) the power to elect that number of directors or members of another governing body that are necessary to control the policies of Licensee is held by any "person" other than Licensee Parent or an entity controlled by Licensee Parent, (iv) a majority of the board of directors or other governing body of Licensee or Licensee Parent is no longer composed of individuals (a) who are members of such governing body on |

Confidential
Execution Version

the date of this Agreement, (b) whose election or nomination to such governing body was approved by individuals referred to in clause (a) above constituting at the time of such election or nomination at least a majority of such governing body or (c) whose election or nomination to such governing body was approved by individuals referred to in clauses (a) and (b) above constituting at the time of such election or nomination at least a majority of such governing body or (v)



3. 

4. For purposes of this Section XVI, (x) "control" with respect to an entity shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise, and (y)

| XVII. Guarantee / Credit Support | 1. | **Guarantee:** To induce the NBA to enter into this Agreement and in recognition of the substantial benefits that will be received by Licensee Parent hereunder, Licensee Parent, intending to be legally bound only to the provisions set forth in and incorporated into this Section XVII.1, hereby absolutely, irrevocably and unconditionally guarantees to the NBA, on the terms and conditions set forth in and incorporated into this Section XVII.1, the timely payment and performance in full of all payment and funding obligations required of Licensee pursuant to this Agreement (collectively, the "**Obligations**") as and when such Obligations become due in accordance with the terms and provisions of this Agreement (the "**Guarantee**"). Accordingly, if Licensee fails to pay or perform any of the Obligations when due, then Licensee Parent shall, promptly following demand by the NBA, pay to the NBA or otherwise fund, as the case may be, such Obligations (subject in all |
|---|---|---|

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM     INDEX NO. 653721/2024
NYSCEF DOC. NO. 87     Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 29 of 60     RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9     RECEIVED NYSCEF: 07/26/2024

events to any express limitations set forth in this Section XVII.1), and the NBA may at any time at its option, and so long as Licensee has failed to pay or perform any such Obligations when due, take any and all actions available pursuant to this Section XVII.1 or under any applicable law to collect Licensee Parent's liabilities and obligations under the Guarantee in respect of the amount of any such Obligations (subject in all events to any express limitations set forth in this Section XVII.1). The NBA hereby agrees that Licensee Parent has the right to assert any and all defenses which Licensee may have to payment or funding of any Obligations in accordance with the terms and conditions of this Agreement, except that Licensee Parent shall not be permitted to assert defenses arising from the bankruptcy, insolvency or reorganization of Licensee. Licensee Parent shall not have any obligation or liability to any person other than the NBA relating to, arising out of, or in connection with the Guarantee or this Agreement. The NBA further acknowledges that, in the event that Licensee has any unsatisfied Obligations, the payment or funding of such Obligations by Licensee Parent (or by any other person, including Licensee, on behalf of Licensee Parent) shall constitute satisfaction in full of Licensee Parent's and Licensee's payment or funding obligations with respect thereto, as applicable. The Guarantee is an unconditional guarantee of payment and not of collection. Licensee Parent agrees that the Guarantee is a continuing guarantee and shall remain in full force and effect until all Obligations of Licensee have been fully performed as set forth in this Agreement. Licensee Parent irrevocably waives acceptance hereof, presentment, demand, protest and any notice not expressly provided for in this Section XVII.1, as well as any requirement that at any time any action be taken by the NBA or any other person or entity against Licensee, including, without limitation, to enforce or exhaust any remedies, before proceeding to enforce the Guarantee. Licensee Parent agrees that its liability under the Guarantee shall not be discharged or impaired by (i) any amendment to this Agreement (other than as expressly related to this Section XVII.1); (ii) any bankruptcy, insolvency, reorganization or other event of Licensee that results in any payment or performance of the Obligations being voided, rescinded or returned by Licensee (in which case this Guarantee shall be reinstated); or (iii) any circumstances whatsoever that constitute a defense or a legal or equitable discharge of a guarantor or surety, whether foreseen or unforeseen. To the extent applicable, Paragraphs 8-12 of Exhibit F are hereby incorporated into and made part of this Paragraph, in all cases with Licensee Parent replacing references to Licensee therein.

2. Credit Support.

    a. If Licensee Parent's unsecured corporate family is not rated at or above (a) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ then Licensee shall deposit into the Escrow Account (as defined below), within 30 days, an amount equal to the following: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 30 of 60

Confidential
Execution Version



Licensee shall thereafter be responsible for maintaining the applicable Escrow Amount in the Escrow Account, on a rolling basis

If, after such occurrence, Licensee Parent's unsecured corporate family have Compliant Ratings, such Escrow Account requirement shall terminate, provided that if at any time thereafter Licensee Parent's unsecured corporate family ceases to have Compliant Ratings, then such Escrow Account requirement will be reinstated and Licensee will be required to deposit the applicable Escrow Amount into the Escrow Account within 30 days, subject to, if applicable, the Credit Support Proviso Procedures.

b. For clarity, (i) if any amounts are drawn by the NBA from the Escrow Account pursuant to Section XVII.2.f below in satisfaction of any Annual Fee payments due hereunder, then Licensee will be required to replenish the Escrow Account with funds necessary to satisfy the Escrow Amount within five business days in order to ensure that the aggregate Annual Fees required by this Section XVII.2 are on deposit therein at all times and (ii) following the payment by Licensee of any Annual Fees due hereunder, Licensee will deposit into the Escrow Account such additional funds as are necessary to satisfy the applicable Escrow Amount.

c. 

d. At any time that Licensee is required to maintain funds in the Escrow Account, the NBA may elect, in its sole discretion, to instead require that Licensee deliver to the NBA (and thereafter maintain for the benefit of the NBA) letters of credit reasonably acceptable to the NBA from issuing banks reasonably approved by the NBA, which letters of credit will be in an amount equal to the amounts required to be maintained in the Escrow Account pursuant to the terms above. If the NBA does make such election, Licensee will deliver such letters of credit to the NBA within 30 days.

Confidential
Execution Version

e. The **"Escrow Account"** shall be a segregated account maintained by the Escrow Agent pursuant to the terms of this Agreement and an escrow agreement to be entered into among the NBA, Licensee and the Escrow Agent. Licensee and the NBA will negotiate in good faith to determine the escrow agent, which shall be a nationally prominent banking institution reasonably acceptable to both Licensee and the NBA (the **"Escrow Agent"**), within five days of Licensee Parent's unsecured corporate family ceasing to have Compliant Ratings. Promptly following such determination, Licensee and the NBA will, within the applicable timeframes in this Section XVII.2, (i) negotiate in good faith using commercially reasonable efforts the terms and conditions of a customary escrow agreement, consistent with the terms of this Agreement, with the Escrow Agent, and (ii) enter into such escrow agreement unless any letter of credit or other credit support is posted in lieu thereof if applicable; provided that, subject to the NBA's compliance with clause (i) of this sentence, if Licensee and the NBA have not entered into the escrow agreement within 30 days of Licensee Parent's unsecured corporate family ceasing to have Compliant Ratings, then, unless and until the parties enter into such escrow agreement, NBA may elect, in its sole discretion, to require that Licensee make a cash payment to NBA in an amount equal to the amount then-required to be maintained in the Escrow Account pursuant to the terms above. In any instance where an Escrow Account requirement under this Section XVII.2 has been triggered and then terminated, and thereafter is triggered again, Licensee and the NBA, negotiating in good faith at such time, will determine whether to continue with the most recent Escrow Agent and Escrow Agreement or re-employ the procedures in this Paragraph.

f. The NBA shall be entitled to draw on the Escrow Account (or any letter of credit or other credit support posted in lieu thereof if applicable) at any time if an Annual Fee payment has not been made by Licensee when due hereunder.

g. Licensee's failure to timely deposit the applicable Escrow Amount into (and thereafter to timely maintain the applicable Escrow Amount in) the Escrow Account (or, if applicable, to timely deliver to the NBA (and thereafter maintain) letters of credit or other credit support in lieu thereof) as required by the preceding terms of this Section XVII.2 shall be a material breach of this Agreement which shall allow the NBA, at the NBA's option, to terminate this Agreement (x) immediately upon notice; or (y) also upon notice, effective at the end of the then-current or upcoming NBA season, it being understood that in the case of (y), (I) NBA may opt at any time and with immediate effect to take over production of all Games/Events (in which case NBA will be entitled to be reimbursed for its reasonable out-of-pocket costs and expenses), and (II) Licensee may cure within 10 business days of NBA's notice (i.e., by depositing/maintaining the applicable Escrow Amount in the Escrow Account, or, if applicable, delivering/renewing letters of credit or other credit support, in either case satisfying the above).



XVIII. [redacted]    1. [redacted]

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 32 of 60

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

| | |
|---|---|
| | ██████████████████████████ |
| **XIX. Miscellaneous** | 1. <u>Reserved Rights.</u>  Other than the rights and exclusivities expressly granted or otherwise afforded to Licensee hereunder, all rights in respect of NBA games shall be reserved by and to the NBA and its member teams.<br><br>2. <u>Payment Terms.</u> The Annual Fee for each 12-month period of the Term commencing on October 1, 2025 (each such 12-month period (or such shorter period in the case of the period commencing October 1, 2035 through the expiration of the Term), a "**Year**") shall be payable to NBA as set forth in Exhibit C. If Licensee shall fail to timely pay any amount due under this Agreement, then upon notice of this failure to pay and Licensee's failure to remit such amount within ten (10) days of its receipt of such notice, without prejudice to any other rights that the NBA may have under this Agreement or otherwise, Licensee shall pay interest on such amount at a rate equal to the lesser of (i) three percent (3%) per annum over the average prime rate (announced by J.P. Morgan Chase, New York branch) prevailing during the period between the date the payment first became due and the date such payment is actually paid or (ii) the highest rate permitted by law during the period between the date the payment first became due and the date such payment is actually paid.<br><br>3. <u>Standard Terms and Conditions.</u>  The NBA Standard Terms and Conditions attached as Exhibit F hereto are hereby incorporated into and made part of this Agreement by this reference. |

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM    INDEX NO. 653721/2024
NYSCEF DOC. NO. 87    Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 33 of 60    RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9    RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have executed and delivered this Agreement as of the Effective Date:

**AGREED TO AND ACCEPTED:**

**NBCUNIVERSAL MEDIA, LLC**

Date: July 15, 2024

**AGREED TO AND ACCEPTED:**

**NATIONAL BASKETBALL ASSOCIATION**

By:_____

Name:

Title:

Date

**AGREED TO AND ACCEPTED, solely with respect to Paragraph 1 of Section XVII:**

**COMCAST CORPORATION**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NBA MEDIA VENTURES, LLC**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NBA ENTERTAINMENT, a division of NBA PROPERTIES, INC.**

By:_____

Name:

Title:

Date:

Signature Page to NBCUniversal - NBA U.S. Rights Agreement

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024

NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 34 of 60

INDEX NO. 653721/2024
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have executed and delivered this Agreement as of the Effective Date:

**AGREED TO AND ACCEPTED:**

**NBCUNIVERSAL MEDIA, LLC**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NATIONAL BASKETBALL ASSOCIATION**

By:_____

Name:

Title:

Date

**AGREED TO AND ACCEPTED, solely with respect to Paragraph 1 of Section XVII:**

**COMCAST CORPORATION**

Date: 7/15/2024

**AGREED TO AND ACCEPTED:**

**NBA MEDIA VENTURES, LLC**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NBA ENTERTAINMENT, a division of NBA PROPERTIES, INC.**

By:_____

Name:

Title:

Date:

Signature Page to NBCUniversal - NBA U.S. Rights Agreement

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM          INDEX NO. 653721/2024

NYSCEF DOC. NO. 87          Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 35 of 60     653721/2024
                                                                                          RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9                                                                          RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have executed and delivered this Agreement as of the Effective Date:

**AGREED TO AND ACCEPTED:**

**NBCUNIVERSAL MEDIA, LLC**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NATIONAL BASKETBALL ASSOCIATION**

By:_____

Name:

Title:

Date

**AGREED TO AND ACCEPTED, solely with respect to Paragraph 1 of Section XVII:**

**COMCAST CORPORATION**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NBA MEDIA VENTURES, LLC**

By:_____

Name:

Title:

Date:

**AGREED TO AND ACCEPTED:**

**NBA ENTERTAINMENT, a division of NBA PROPERTIES, INC.**

By:_____

Name:

Title:

Date:

Signature Page to NBCUniversal - NBA U.S. Rights Agreement

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 36 of 60

Confidential
Execution Version

**Exhibit A**

**Start Times**

| | Game / Event | Start Times |
|---|---|---|
| 1. | NBA Regular Season Games: | "Standard Start Times" for Game windows (commencing with a pre-game show): <br><br> A. Sunday Night Games: <br>   • ███████████████████████ <br><br> B. Monday Games: Licensee will have flexibility to identify the number of Game windows and at such times, notified to the NBA on or before the Schedule Notification Date with such scheduling subject to NBA's determination acting reasonably (e.g., single primetime game at 7:00 PM ET, or doubleheader Games, but taking into account teams' standard Monday night start times). NBA will determine in meaningful consultation with Licensee the start times of the national holiday afternoon Games / triple header Games prior to each season. <br><br> Licensee may request, and NBA will consider in good faith, start time changes from teams' standard Monday night start times. <br><br> C. Tuesday Games: <br>   • Regionalized Games: <br>     1. One Game window to commence at 8:00 PM Eastern Time that will be available (i) on NBC across the Eastern and Central time zones (with the option for NBC stations in the Pacific and Mountain time zones to distribute the Game) and (ii) on the Authorized OTT Service(s) on a national basis <br>     2. One Game window to commence at 8:00 PM Pacific Time available (i) on NBC across the Pacific and Mountain time zones (with the option for NBC stations in the Eastern and Central time zones to distribute the Game) and (ii) on the Authorized OTT Service(s) on a national basis <br>     3. For any Game window that commences at 8:00 PM ET/PT, Licensee will have flexibility to designate the commencement of such Game window at 7:30 PM ET/PT, with at least 2 weeks prior notice and with such scheduling subject to NBA's determination, acting reasonably |

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

| | Game / Event | Start Times |
|---|---|---|
| | | After the end of each NBA season, the parties will discuss potential modifications to the Game window start times. |
| | | NBA to set tip times no later than :15 for games scheduled for the top of the hour or :45 for games scheduled for the bottom of the hour. |
| | | Licensee to work in good faith with NBA to discuss start times that fall outside of Standard Start Time windows, but subject to NBA's need for flexibility to optimize NBA schedule. |
| | • Season Tip-Off | Double-header window to commence at 7:00 PM or 7:30 PM Eastern Time, at NBA's election |
| 2. | Playoffs: | |
| | • First Round & Conference Semifinals | Standard Start Times |
| | • Conference Finals | Eastern Conference: 8:00 pm ET<br><br>Western Conference: 8:30 pm ET or weeknights and 8:00 pm ET on Saturdays or Sundays |
| 3. | NBA All-Star Weekend | |
| | Rising Stars | 9:00 pm ET |
| | All-Star Saturday Night | 8:00 pm ET |
| | All-Star Game | 8:00 pm ET |
| | HBCU Classic | 4:00 pm ET |

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 38 of 60

Confidential
Execution Version

**Exhibit B**

**Summary of Sales Rights and Obligations**

**I.    Commercial Units**

A.    <u>Number of Commercial Units:</u> ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

B.    <u>Telecaster Sales:</u> ████████████████████████
████████████████████████████████████████████
████████████████████

C.    <u>NBA Institutional Units:</u> ████████████████████
████████████████████████████████████████████
████████████████████████████████████

**II.    Camera Visible Signage**

A.    <u>Courtside Rotational Signage:</u> ████████████████
████████████████████████████████████████████
████████████████████

i.    ████████████████████████████████████████
ii.    ████████████████████████████████████████
████████████████████████████████████

B.    <u>Virtual Signage:</u> NBA retains the right to use or sell virtual signage in game telecasts, ████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████

C.    <u>Signage Financial Commitment:</u> ████████████████
████████████████████████████████████████████
████████████████████

D.    <u>Other Camera Visible Signage/Branding:</u> NBA may use or sell other camera-visible physical
signage around the court, ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Confidential
Execution Version



E. ███████████████████████████████

### III. Enhancements

    A. <u>Number of Enhancements:</u> ███████████████
███████████████████████████████████
███████████████████████████

    B. <u>Telecaster Sales:</u> ██████████████████████
████████

    C. <u>Competing Advertisers:</u> ████████████████████
███████████████████████████████████
███████████████████████████████████
       i. ████████████████████████████████
          ████████████
       ii. ███████████████████████████████
███████████████████████████████████
█████████████████

    D. The types and format of enhancements are subject to NBA approval (standard enhancement types/formats used across NBA game telecast partners will be approved).

    E. ███████████████████████████████████
███████████████████████████████████
██████ ██ ██ ████ ████ ██ █ ██ ██ ████
████████████████████.

    F. Each of the parties may insert or include (and NBA may cause telecaster to insert or include) standard graphics and other promotional messaging in the form of "crawls" and lower 3rd

Confidential
Execution Version

graphics and announcer audio drops for institutional purposes. NBA may include such graphics and promotional messaging consistent with past practice. Telecaster may include such graphics and promotional messaging subject to NBA's reasonable approval.

### IV. Title and Presenting Sponsorships

A. ███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████

B. Telecaster may sell presenting sponsorships to ancillary programs (e.g., a weekly ancillary show).

C. ███████████████████████████████████████████████
███████████████████████████████████

D. ███████████████████████████████████████████████
██████████████████

E. ███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████

   i. Telecaster will pass-through any such presenting or title partner branding during game telecasts and programs.

   ii. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

### V. Authorized Digital Channels

A. ███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

B. For clarity, no pre-roll or mid-roll advertising may depict any NBA IP unless for an NBA official marketing partner and such advertising has been approved by the NBA.

### VI. "First Look" and Protections for NBA Official Marketing Partners; Limitations; Standards

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 41 of 60

Confidential
Execution Version

A. **"First Look" Opportunity:** Telecaster will offer NBA official marketing partners a "first look" review period of ▮ business days to assess and purchase any enhancement or presenting sponsorship before it provides such opportunity to any other advertiser.

B. **Modified Enhancement/Presenting Sponsorship Opportunities:** If the nature of any enhancement or presenting sponsorship is materially modified after providing a "first look" then telecaster must provide each NBA official marketing partner an additional ▮ business days to review the modified opportunity before providing it to another advertiser.

C. **Incumbency Limits:** ██████████████████████████████████
████████████████████████████████████████████████

    i.   ██████████████████████████████
    ii.  ██████████████████████████████████

D. **Protected Partners:** ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

E. **NBA Limitations:** ████ ████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████ █ ███████████████████ █ ████ █ ████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████

F. **Standards & Practices:** ██████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

## VII. Sports Betting

A. **Authorized Gaming Operator Requirement:** In addition to the requirements in the Agreement and herein, no promotional opportunity or messaging (e.g., a commercial unit or enhancement) may be used or included in any game, NBA program or NBA content licensed to Licensee hereunder to promote any sports betting operator or its associated brand or messaging unless the sports betting operator is then-currently designated by NBA as an Authorized Gaming Operator in accordance with NBA rules. (For clarity, an Authorized Gaming Operator is not an NBA official marketing partner unless the NBA has an applicable official marketing partnership

Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 42 of 60

Confidential
Execution Version

agreement with such operator.)  NBA shall deliver to NBC (email sufficing) a full and complete list of NBA's Authorized Gaming Operators no later than June 1 preceding each and every NBA season during the Term.  Additionally, NBA shall immediately deliver to NBC (email sufficing) an updated full and complete list of NBA's Authorized Gaming Operators if any new Authorized Gaming Operators are added after June 1.

B.  <u>Other Promotional Rules</u>: The promotion or inclusion of any Authorized Gaming Operator, international sports betting operator (which must legally operate in the particular country or jurisdiction), and/or any sports betting messaging or activity in any game, NBA program or other NBA content licensed to Licensee hereunder is subject to NBA rules of general applicability (e.g., regarding limits on the amount of sports betting messaging in a game telecast) and compliance with all applicable laws and regulations.

Confidential
Execution Version

**Exhibit C**

**Annual Fee**

1. With respect to each Year, Licensee shall pay to NBA the following annual fee (the "**Annual Fee**"):

| Year | Licensing Rights | Annual Marketing Payment | Annual Fee (U.S. Dollars) |
|---|---|---|---|
| ██████████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ ██ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ ██ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ | ██████ | ██████ | ██████ |
| ██████████████ ██████████ ██ | ██████ | ██████ | ██████ |

2. <u>Annual Fee Payment Schedule.</u> ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 44 of 60

Confidential
Execution Version

**Exhibit D**

**Authorized Licensee Platforms and Other Licensee Platforms**



3. NBA, acting reasonably, shall consider approving additional services and platforms requested by Licensee, provided that any approval will not be conditioned on the payment of any additional consideration.

4. For clarity and without limiting the foregoing, no live Game/Event content (or full-length Game/Event replay) may be distributed by any Other Licensee Platform, including any social media extension of any Authorized Licensee Platform.

5. For clarity, the foregoing Authorized Licensee Platforms may be distributed through other distributors' access points (e.g., a MVPD's VOD library, a Channels store to which the applicable Authorized Licensee Platform has been licensed), but in all cases only in connection with such

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

distributor's distribution of the relevant Authorized Licensee Platform to the extent authorized under this Agreement (and not on any other basis).

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 46 of 60

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

**Exhibit E**
**Data Sharing**



Confidential
Execution Version



2.

3.

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM

NYSCEF DOC. NO. 87

NYSCEF DOC. NO. 9

INDEX NO. 653721/2024

RECEIVED NYSCEF: 10/29/2024

RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 48 of 60

**Confidential**
**Execution Version**

4.

NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9
Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 49 of 60
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

**Confidential**
**Execution Version**



Confidential
Execution Version



FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9

INDEX NO. 653721/2024
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 51 of 60

Confidential
Execution Version



FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024

NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 52 of 60

Confidential
Execution Version

**Exhibit F**

**NBA STANDARD TERMS AND CONDITIONS**

1. **Certain Definitions**:
   a) "**Affiliate**" means any person or entity (including limited liability companies, partnerships and similar entities) directly or indirectly controlling, controlled by, or under common control with an entity, whether existing as of the Effective Date (as defined in the Agreement) or created thereafter.
   b) "**Agreement**" means the Agreement together with all exhibits and attachments thereto and these Standard Terms and Conditions (the "**Standard Terms**").
   c) "**Intellectual Property Rights**" means any and all worldwide rights, titles and interests, whether foreign or domestic, in and to any and all trade secrets, patents, copyrights, service marks, trademarks, trade dress, know-how, or similar intellectual property rights, as well as any and all moral rights, and similar rights of any type under the laws or regulations of any governmental, regulatory or judicial authority.
   d) "**Marks**" means trademarks, service marks, names, logos, symbols, designations, emblems, designs, trade dress and uniforms and all identifications, labels, insignia or indicia thereof.
   e) "**NBA Content**" means the Games, the Events, the Shoulder Programming alternate telecasts of the foregoing, highlights, NBA Footage, NBA Photos and any other content licensed, or materials provided, by NBA to Licensee pursuant to the Agreement.
   f) "**NBA Footage**" means videotape or film footage that depicts any NBA Mark and that is licensed by or on behalf of NBA to Licensee pursuant to the Agreement.
   g) "**NBA Marks**" means the Marks of the National Basketball Association, its teams, and their respective Affiliates.
   h) "**NBA Photos**" means any photograph that depicts any NBA Mark licensed by or on behalf of NBA to Licensee pursuant to the Agreement.
   i) "**Licensee Marks**" means the Marks of Licensee and its Affiliates.
   j) "**Licensee Platforms**" means Authorized Licensee Platforms and Other Licensee Platforms.
   k) "**Security Breach**" means a compromise or failure of any facilities or infrastructure used by Licensee in connection with the storage or digital distribution of NBA Content on Licensee Platforms which results in the non-*de minimis* availability or use of NBA Content by a third party in a manner that is not authorized under this Agreement.

2. **Intellectual Property Matters**:
   a) Trademarks.
      i. As between the parties, the NBA Marks and the goodwill attached thereto belong exclusively to NBA, and any use by Licensee of the NBA Marks shall inure exclusively to the benefit of NBA. Any right in or to the NBA Marks that may accrue to Licensee shall be assigned to NBA or its designee upon NBA's request.
      ii. As between the parties, the Licensee Marks and the goodwill attached thereto belong exclusively to Licensee, and any use by NBA of the Licensee Marks shall inure exclusively to the benefit of Licensee. Any right in or to the Licensee Marks that may accrue to NBA shall be assigned to Licensee or its designee upon Licensee's request.
   b) Copyright Notices. Licensee shall affix a copyright notice in the name of the National Basketball Association (Copyright [Year] National Basketball Association), in accordance with the requirements established by applicable laws and regulations, at least once during, and at the close, of each Game or Event telecast hereunder in such form as the NBA may reasonably require. In addition, Licensee shall telecast an animated graphic provided by the NBA containing the following announcement, or a substantially similar announcement, at least once during each such telecast: "This copyrighted telecast of the National Basketball Association is intended solely for the entertainment of our audience and any retransmission, reproduction, rebroadcast or other use or dissemination of this telecast, or the pictures, descriptions, or accounts of this Game, without the express written consent of the National Basketball Association, is prohibited." Licensee shall record

Confidential
Execution Version

each Game or Event telecast in whatever form as may be necessary to preserve the copyright of the National Basketball Association therein and, at the NBA's request, execute any affidavit necessary to confirm such recording.

c) <u>Protection of Intellectual Property Rights.</u>

 i. Licensee shall employ industry-standard geo-filtering and digital rights management solutions in connection with its distribution of NBA Content on Licensee Platforms.

 ii. Licensee shall cooperate and reasonably assist NBA in the protection of the rights of NBA in and to the NBA Content and the NBA Marks, and NBA shall cooperate and reasonably assist Licensee in the protection of the rights of Licensee in and to the Licensee Marks; provided that each party (x) shall be required to provide such cooperation and reasonable assistance only to the extent that the need to protect the rights in question arises out of or relates to this Agreement, and (y) shall be reimbursed for any reasonable out-of-pocket costs actually incurred in providing such cooperation and assistance.

 iii. In the event of any known or suspected Security Breach, Licensee will promptly notify NBA and the parties will cooperate in good faith to remedy the Security Breach in a manner that is reasonably satisfactory to NBA as soon as reasonably practicable.

d) <u>Take-Down.</u> If NBA requests in good faith that any NBA Content (other than any Game or Event distributed on a live basis) be deleted, corrected, replaced or made inaccessible because NBA reasonably believes that such NBA Content (i) violates applicable law or the Intellectual Property Rights of any third party, (ii) reflects unfavorably upon the NBA, any team, player or personnel (e.g., gambling, obscenity, etc.) in a manner that creates a significant reputational issue for a party in NBA's reasonable and good faith determination or (iii) is otherwise reasonably likely to cause material harm to the NBA's business in NBA's reasonable and good faith determination, then (x) Licensee shall promptly delete or make inaccessible, as applicable, the affected NBA Content, and (y) NBA shall reasonably promptly, if commercially practicable, (1) edit the affected content to cure such alleged violation, and (2) deliver to Licensee such corrected replacement content compliant with the terms set forth in this Agreement (and Licensee may then distribute such corrected content consistent with the terms of this Agreement).

e) <u>Suspension Right.</u> NBA shall have the additional right, upon notice to Licensee, to unilaterally and immediately suspend the availability of the NBA Content (and, with respect to any Game or Event distributed on a live basis, such future Games/Events commencing on the following day) via the Licensee Platforms (i) in the event that Licensee, in a non-*de minimis* fashion, distributes the NBA Content in a manner not authorized under this Agreement (e.g., via an unauthorized means of distribution) or (ii) if there is more than one Security Breach during any one (1) year period during the Term, upon the occurrence of any Security Breach after the first Security Breach; provided that any such suspension pursuant to clause (i) or (ii) shall be limited solely to the extent necessary, and solely for so long as is necessary, to address the distribution or Security Breach at issue.

f) <u>Approvals.</u> NBA Content and NBA Marks may be used by Licensee only in a form approved by NBA, and Licensee Marks may be used by NBA only in a form approved by Licensee. For clarity, all promotional and marketing materials using any NBA Intellectual Property will be subject to NBA's standard "business review" process. In each instance in which approval, consent or authorization by either party is required hereunder, unless otherwise stated in a particular section hereof, such approval, consent or authorization is required to be in writing and may be given or withheld in such party's sole discretion.

3. **Indemnification**:

a) NBA shall be solely responsible for, and shall defend, hold harmless and indemnify Licensee, its Affiliates and their respective directors, officers, employees and agents (collectively, "**Licensee Indemnitees**") against any claims, demands, disputes, causes of action or damages, including reasonable outside attorneys' fees (collectively, "**Claims**") asserted by a third party against any Licensee Indemnitee that is caused by, arises out of or relates (all of the foregoing, "arises out of") to:

 i. NBA's gross negligence, willful misconduct, or fraud in connection with this Agreement;

Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 54 of 60

Confidential
Execution Version

ii.    any breach of this Agreement by NBA, including any representation, warranty or covenant made hereunder by NBA;

iii.    any use by Licensee of NBA Marks in accordance with the Agreement;

iv.    any use by Licensee of NBA Content in accordance with the Agreement; provided that NBA's indemnification of Licensee under this Section 3(a)(iv) excludes Claims arising out of

    (A)  content created, produced or provided by Licensee, including the Game and Event productions (except to the extent that a Claim relating to a Game or Event produced by Licensee arises out of (x) the actual staging and playing of the Game or the staging of the Event by NBA or (y) any NBA Marks, NBA Footage or NBA Photos),

    (B)  modifications to NBA Content by Licensee after delivery by NBA, or

    (C)  the combination of NBA Content with other products, processes or materials not provided by NBA (e.g., Licensee-provided enhancements, features or functionalities) to the extent that the Claim is caused by such other products, processes or materials not provided by NBA;

v.    any physical damage to tangible property and/or personal injuries, including death, to any person, arising from the actual or alleged negligent act(s) or omission(s) or willful misconduct of the NBA, its employees or agents in connection with the staging or playing of the Games hereunder or the staging of the Events hereunder; or

vi.    NBA's violation (or alleged violation) of laws in connection with this Agreement;

provided that NBA is given prompt written notice of and shall have the option to undertake and control the defense of any such Claim. Licensee shall cooperate fully with and assist NBA in all respects in connection with defense of any such Claim and NBA shall keep Licensee fully advised of all developments pertaining thereto. NBA shall not enter into a settlement of any such Claim or admit liability or fault without Licensee's prior written approval, which shall not be unreasonably withheld.

b)    Licensee shall be solely responsible for, and shall defend, hold harmless and indemnify NBA, the National Basketball Players Association ("**NBPA**"), the teams of the NBA, and their respective Affiliates, owners, directors, governors, officers, employees and agents (collectively, "**NBA Indemnitees**") against any Claims asserted by a third party against any NBA Indemnitee that is caused by, arises out of or relates to:

i.    Licensee's gross negligence, willful misconduct, or fraud in connection with this Agreement;

ii.    any breach of this Agreement by Licensee, including any representation, warranty or covenant made hereunder by Licensee;

iii.    any use by NBA of Licensee Marks in accordance with the Agreement;

iv.    any content created, produced or provided by Licensee pursuant to the Agreement, including the Game and Event productions (except to the extent that a Claim relating to a Game or Event produced by Licensee arises out of (x) the actual staging and playing of the Game or the staging of the Event by NBA or (y) any NBA Marks, NBA Footage or NBA Photos));

v.    any content or materials (including commercial advertisements and Licensee-provided enhancements, features or functionalities) incorporated into or used in conjunction with any NBA Content (e.g., as part of a feature or functionality);

vi.    any physical damage to tangible property and/or personal injuries, including death, to any person, arising from the actual or alleged negligent act(s) or omission(s) or willful misconduct of Licensee, its employees or agents in connection with the production of the Games or Events hereunder; or

vii.    Licensee's violation (or alleged violation) of laws in connection with this Agreement;

provided that Licensee is given prompt written notice of and shall have the option to undertake and control the defense of any such Claim. NBA shall cooperate fully with and assist Licensee in all respects in connection with defense of any such Claim and Licensee shall keep NBA fully advised

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 55 of 60

Confidential
Execution Version

of all developments pertaining thereto. Licensee shall not enter into a settlement of any such Claim or admit liability or fault without NBA's prior written approval, which shall not be unreasonably withheld.

4. **Termination for Breach**: In addition to any other rights either party may have pursuant to the Agreement, either party shall have the right to terminate the Agreement (a) for material breach by the other party or (b) if the other party suffers an event whereby (i) such party files a petition for winding up; (ii) a proceeding or other action is filed against such party under insolvency or similar laws (unless such petition or proceeding is dismissed within 60 days); (iii) such party becomes insolvent; or (iv) such party makes an assignment for the benefit of creditors; provided that any termination pursuant to clause (a) above shall take effect (unless otherwise provided for in the Agreement) (x) thirty (30) days after notice of the material breach is received by the breaching party if the material breach is curable and has not been cured during such thirty (30)-day period or (y) immediately upon notice if the material breach is objectively not curable.

5. **[Reserved.]**

6. **Work Stoppage**: In the event of a strike by the National Basketball Players Association or a lockout of NBA players by the NBA (in either case, an "**NBA Work Stoppage**") the provisions set forth on Schedule 1 shall apply. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████

7. **Force Majeure**: In the event that any Game or Event is interrupted, delayed, prevented or canceled at the scheduled time due to a Force Majeure Event (defined below), then the affected party(ies) shall not be in breach and will be excused from performance hereunder with respect to the duration of such Force Majeure Event and only with respect to the Game(s) or Event(s) affected thereby, and (except as expressly provided below) all other rights and obligations of the parties hereunder will not be affected. If any Game itself is played or Event takes place (either as initially scheduled or as rescheduled due to a Force Majeure Event), but Licensee's distribution of all or part thereof is prevented or interrupted due to a Force Majeure Event, Licensee will not be entitled to any refund or reduction of the rights fees due hereunder. In the event that a Game is not able to be played or take place as scheduled due to a Force Majeure Event and such Game (or a substitute Game) is not re-scheduled by the NBA within a Designated Window (each, a "**Lost Game**"), then Licensee shall be entitled (as its sole and exclusive remedy) to an equitable reduction in the rights fee due in respect of such affected season to be negotiated in good faith by the parties. If the parties cannot agree on the amount of any Lost Game rights fee reduction within 30 days, either party may submit the matter to arbitration in front of JAMS pursuant to the JAMS commercial arbitration rules, with the site of such arbitration to be New York, New York. "**Force Majeure Event**" means, whether or not foreseeable, an Act of God; epidemic; pandemic (including the COVID-19 pandemic and any future resurgence and related governmental and/or sport governing body restrictions); strike, lockout, work stoppage or other labor disturbance (but excluding an NBA Work Stoppage, which shall not constitute a breach hereunder, but which shall be addressed via the other terms hereof); fire, storm, earthquake, flood or other casualty event; act or threat of terrorism; riot, invasion or accident; government interference, regulation, appropriation or rationing; delivery failure or transmission failure; failure at the origination and uplinking center or other inability to secure the feeds or any necessary goods and materials or shipments; or any other event or condition beyond the reasonable control of the party obligated to perform hereunder.

8. **Limitation of Liability**: EXCEPT WITH RESPECT TO ALL OF ITS INDEMNIFICATION

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF   Document 51-3   Filed 08/25/25   Page 56 of 60

Confidential
Execution Version

OBLIGATIONS HEREUNDER, ITS CONFIDENTIALITY OBLIGATIONS UNDER SECTION 12(g) OF THESE STANDARD TERMS, AND ITS DATA-RELATED OBLIGATIONS AS SET FORTH IN EXHIBIT E, TO THE EXTENT PERMITTED BY LAW, NEITHER PARTY SHALL, FOR ANY REASON OR UNDER ANY LEGAL THEORY, BE LIABLE TO THE OTHER OR ANY THIRD PARTY FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR STATUTORY DAMAGES, OR FOR LOSS OF PROFITS, REVENUES, DAMAGE TO OR LOSS OF PERSONAL PROPERTY OR DATA OR SERVICES, REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN INFORMED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES.

9.

10. **Notices**: Except where this Agreement specifically states that notice by email suffices, all notices under this Agreement shall be delivered in writing and shall be by personal delivery, overnight delivery, registered or certified mail, or electronic mail, return receipt requested. Any written notice shall be deemed to have been given (i) if by personal delivery, when actually delivered; (ii) if by overnight delivery, certified or registered mail, upon pre-paid delivery into the custody of the United States Postal Service or other courier service; and (iii) if by electronic mail, upon receipt by the noticing party of the return receipt. Notices to NBA shall be sent to President, Global Content and Media Distribution, NBA Properties, Inc., 645 Fifth Avenue, New York, New York 10022, (212) 407-8000, with a courtesy copy to General Counsel, NBA Properties, Inc., at the same address. Notices to Licensee shall be sent to President, NBC Sports, 1 Blachley Road, Stamford, CT 06902, with a mandatory copy delivered to ███████████████████████ If the date a notice or other communication is due hereunder falls on a Saturday, Sunday or Federal holiday, then such notice or other communication shall be due on the next business day.

11. **Assignment**. NBA may assign its rights (including rights to receive payment) and delegate its duties under this Agreement to one or more Affiliates (including, without limitation, the NBA member teams) that is capable of performing the NBA's obligations hereunder and expressly assumes such obligations for the express benefit of Licensee, provided that any such assignment, subcontract, delegation, or sublicense will not relieve the NBA party holding the rights of its obligations under this Agreement (and any action or omission by any such assignee, subcontractor, delegee or sublicensee in connection with its exercise of any such rights or performance of any such obligations shall constitute an action or omission, respectively, of the respective NBA party for purposes of this Agreement). Licensee may subcontract or delegate to third party independent contractors its obligations related to the Games and Events and may assign, subcontract, delegate, or sublicense any of its rights or obligations hereunder to any Licensee Affiliate as deemed necessary by Licensee to exercise its rights and obligations under this Agreement, provided that any such assignment, subcontract, delegation, or sublicense will not relieve Licensee of its obligations under this Agreement (and any action or omission by any such assignee, subcontractor, delegee or sublicensee in connection with its exercise of any such rights or performance of any such obligations shall constitute an action or omission, respectively, of Licensee for purposes of this Agreement). This Agreement will be binding upon, inure to the benefit of, and be enforceable by and against the parties and their permitted successors, assigns, and sublicensees.

12. **Miscellaneous.**
   a) This Agreement will be governed by federal, state and local laws and regulations of the United States of America and the State of New York without regard to conflicts of law rules.
   b) This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument. Delivery of an executed

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM          INDEX NO. 653721/2024
NYSCEF DOC. NO. 87     Case 1:24-cv-09027-KPF     Document 51-3     Filed 08/25/25     Page 57 of 60     RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9                                                        RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

counterpart of a signature page of this Agreement by facsimile or other generally accepted electronic means (e.g., PDF, DocuSign) will be effective as delivery of a manually executed counterpart of this Agreement.

c) Nothing in this Agreement shall be construed to place the parties in the relationship of partners or joint venturers. Neither party shall have the power to obligate or bind the other to a third party in any manner whatsoever.

d) None of the provisions of this Agreement can be waived or modified except expressly by a writing signed by both parties. There are no representations, promises, agreements, warranties, covenants or undertakings by either party other than those contained in this Agreement. No failure on the part of either party to exercise any right under this Agreement shall operate as a waiver of such right; nor shall any single or partial exercise of any right preclude any other or further exercise or the exercise of any other rights. Unless otherwise set forth herein, all rights and remedies provided in this Agreement are cumulative and not exclusive of any other rights or remedies that may be available to the parties, whether provided by law, equity, statute, in any other agreement between the parties or otherwise.

e) This Agreement has been negotiated between the parties, and no provision of this Agreement shall be construed against one party on the basis that such party drafted such provision or this Agreement.

f) No expiration or termination of this Agreement pursuant to Section 4 of these Standard Terms shall relieve Licensee of its obligation to pay NBA any amounts due to NBA at the time of termination. The provisions of Sections 1, 2, 3, 8, 9, 10 and 12 of these Standard Terms and any other provisions that by their nature reasonably should survive such termination or expiration shall survive the expiration or termination of this Agreement.

g) Neither party shall (nor shall they authorize or cause their employees or agents to) disclose, divulge, disseminate or publicize this Agreement, or any terms of this Agreement, to any third party (other than its attorneys or accountants or, in the case of NBA, to the NBA Board of Governors or the NBPA, or to comply with any matching rights obligations concerning the NBA's incumbent national game telecast licensees), except as may be required by law, to fulfill the terms of this Agreement, or to a party's Affiliates that are subject to confidentiality obligations at least as stringent as those provided for herein; provided that in the event disclosure is required by law the disclosing party shall provide the other party with notice that such disclosure is required and the legal basis therefor prior to making such disclosure. In the event either party is required to publicly disclose any of the terms of this Agreement pursuant to a legal proceeding, such party must endeavor to limit the scope of such disclosure and request confidential treatment from the applicable government agency or, if such confidential treatment cannot be obtained, such party must redact all sensitive information (e.g., license fees) from the information to be publicly disclosed.

h) If there is any conflict between the provisions set forth in these Standard Terms & Conditions and the Agreement, the terms of the Agreement will govern.

i) Neither party shall issue a press release or other public announcement relating to this Agreement or the subject matter hereof without the prior approval of the other party.

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
NYSCEF DOC. NO. 87
NYSCEF DOC. NO. 9

INDEX NO. 653721/2024
RECEIVED NYSCEF: 10/29/2024
RECEIVED NYSCEF: 07/26/2024

Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 58 of 60

Confidential
Execution Version

### Schedule 1
### Work Stoppage

(a)    In the event of an NBA Work Stoppage that causes the cancellation of the playing, in whole or in part, of any Game, all other obligations of the parties shall continue (subject to the provisions of this Schedule 1), including all obligations under Section II of and Exhibit C to the Agreement, ████████████████████████████████████████████████████████████████████████████████████████████. If such NBA Work Stoppage causes the preemption, in whole or in part, of the live telecast of any Game that Licensee cannot reschedule for telecast, the parties shall, when such NBA Work Stoppage has ceased, confer in good faith with each other to negotiate with respect to (i) an equitable reduction in the NBA License Fee due hereunder, (ii) a mutually agreeable comparable substitute Game for each Game not telecast or (iii) if the parties deem appropriate, an extension of this Agreement, on mutually agreeable terms (or any combination of the foregoing), with the intent of properly compensating Licensee for any financial losses relating directly to the NBA Work Stoppage, taking into account all relevant factors and circumstances occurring during and after the cessation of the NBA Work Stoppage (e.g., the type of Game(s) that were cancelled due to the NBA Work Stoppage and the effect of the NBA Work Stoppage on advertising sales for the Games telecast during the affected season(s), Game telecast ratings, sponsorship revenues, etc.).

(b)    Notwithstanding anything to the contrary in Paragraph (a) of this Schedule 1, in the event that a NBA Work Stoppage causes the cancellation of the live broadcast of any Game and the parties do not agree with respect to the manner in which the rights of Licensee shall be adjusted in accordance with Paragraph (a) above, then:

(i)    If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the first such cancelled Game (the **"First Subsequent Installment"**) is due, then on such date or on any day thereafter during such NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the First Subsequent Installment ████████████████, subject to, and in accordance with, Paragraph (c) below (the **"First Work Stoppage Payment"**).

(ii)    If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the First Subsequent Installment (the **"Second Subsequent Installment"**) is due, then on the date of the Second Subsequent Installment or on any day thereafter during the NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Second Subsequent Installment ████████████████ subject to, and in accordance with, Paragraph (c) below (the **"Second Work Stoppage Payment"**).

(iii)    If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the Second Subsequent installment (the **"Third Subsequent Installment"**) is due, then on such date or on any day thereafter during the NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Third Subsequent Installment ████████████████, subject to, and in accordance with, Paragraph (c) below (the **"Third Work Stoppage Payment"**).

(iv)    If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the Third Subsequent Installment (the **"Fourth Subsequent Installment"**) is due, then on such date or on any day

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
RECEIVED NYSCEF: 10/29/2024

NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024

Confidential
Execution Version

thereafter during such NBA Work Stoppage, the NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Fourth Subsequent Installment ███████████████████████████, subject to, and in accordance with, Paragraph (c) below (the **"Fourth Work Stoppage Payment"**).

(v)      If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the Fourth Subsequent Installment (the **"Fifth Subsequent Installment"**) is due, then on such date or on any day thereafter during such NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Fifth Subsequent Installment ████████████████████████████, subject to, and in accordance with, Paragraph (c) below (the **"Fifth Work Stoppage Payment"**).

(vi)      If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the Fifth Subsequent Installment (the **"Sixth Subsequent Installment"**) is due, then on such date or on any day thereafter during such NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Sixth Subsequent Installment ████████████████████████████, subject to, and in accordance with, Paragraph (c) below (the **"Sixth Work Stoppage Payment"**).

(vii)      If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the Sixth Subsequent Installment (the **"Seventh Subsequent Installment"**) is due, then on such date or on any day thereafter during such NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Seventh Subsequent Installment ████████████████████████████ subject to, and in accordance with, Paragraph (c) below (the **"Seventh Work Stoppage Payment"**).

(viii)      If such NBA Work Stoppage has not ceased by the date on which the NBA License Fee installment payment due under Exhibit C to the Agreement immediately following the date of the Seventh Subsequent Installment (the **"Eighth Subsequent Installment"**) is due, then on such date or on any day thereafter during such NBA Work Stoppage, NBA (as agent for its member teams) shall be entitled to receive from Licensee, upon at least seven (7) days prior written request, an amount up to the amount of the Eighth Subsequent Installment ████████████████████████████, subject to, and in accordance with, Paragraph (c) below (the **"Eighth Work Stoppage Payment"**). (The amount of the First Work Stoppage Payment (if any), the amount of the Second Work Stoppage Payment (if any), the amount of the Third Work Stoppage Payment (if any), the amount of the Fourth Work Stoppage Payment (if any), the amount of the Fifth Work Stoppage Payment (if any), the amount of the Sixth Work Stoppage Payment (if any), Seventh Work Stoppage Payment (if any), and Eighth Work Stoppage Payment are collectively referred to as the **"Work Stoppage Payments"** and the sum of the Work Stoppage Payments that are actually paid by Licensee is referred to as the **"Total Work Stoppage Payment"**.)

(c)      Following the cessation of a NBA Work Stoppage for which any Work Stoppage Payments are made pursuant to Paragraph (b) above, except as the parties may otherwise agree, NBA shall repay Licensee an amount equal to ████████████████████████████████████████████████████████

FILED: NEW YORK COUNTY CLERK 10/29/2024 12:56 AM
INDEX NO. 653721/2024
NYSCEF DOC. NO. 87
Case 1:24-cv-09027-KPF    Document 51-3    Filed 08/25/25    Page 60 of 60
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 07/26/2024
RECEIVED NYSCEF: 10/29/2024

Confidential
Execution Version



(the result being the **"Repayment Amount"**); provided, however, that in no event shall the Repayment Amount exceed the Total Work Stoppage Payment. The Repayment Amount shall be repaid following the cessation of such NBA Work Stoppage in accordance with Paragraph (d) below; provided, however, that:

(i)

(ii) Repayment by NBA (as agent for its member teams) of any individual Work Stoppage Payment from the Repayment Amount shall be deemed made in the inverse order in which any such Work Stoppage Payment was received by NBA (e.g., if the Repayment Amount includes an amount attributable to any Eighth Work Stoppage Payment, such amount shall be deemed repaid first by NBA; if the Repayment Amount includes an amount attributable to any Seventh Work Stoppage Payment, such amount shall be deemed repaid after repayment of any amount attributable to the Eighth Work Stoppage Payment but prior to repayment of any amount attributable to the First, Second, Third, Fourth, Fifth or Sixth Work Stoppage Payments).

(d) In the event that, upon the cessation of such NBA Work Stoppage, the value (as determined by the parties) of the regular season and playoff games telecast by Licensee during any season in which live Game telecasts were cancelled due to such NBA Work Stoppage exceeds (i) the aggregate amount of NBA License Fee installment payments remaining to be paid to NBA under this Schedule 1 for such season (if any) plus (ii) the Total Work Stoppage Payments received by NBA (as agent for its member teams) for such season (if any), then an amount equal to such excess shall be paid to NBA (as agent for its member teams) by Licensee during the Term pursuant to a schedule to be determined jointly by the parties.

(i) The Repayment Amount shall be repaid through equal deductions from the remaining NBA License Fee installment payments due to NBA under Exhibit C to the Agreement. following the cessation of the NBA Work Stoppage.

(ii) In the event that, upon the cessation of the NBA Work Stoppage, the Repayment Amount exceeds the aggregate amount of the NBA License Fee installment payments due for the remainder of the Term under Exhibit C to the Agreement, the amount of such excess shall be paid by NBA to Licensee no later than December 31, 2036 (unless Licensee is licensed to telecast Games during the 2036-2037 NBA season, in which case such excess shall be paid in eight (8) equal quarterly installments, the first of which shall be paid on or before October 1, 2036 and the last of which shall be paid on or before July 1, 2038).