**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RICHARD COLLURA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WARNER BROS. DISCOVERY, INC., DAVID M. ZASLAV, and GUNNAR WIEDENFELS <br><br> Defendants. | Case No. 1:24-cv-09027-KPF <br><br> ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Jonathan D. Polkes
Stacy Nettleton
Joshua D. Weedman
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 819-8200

Veronica Gordon (admitted *pro hac vice*)
WHITE & CASE LLP
200 South Biscayne Blvd, Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
veronica.gordon@whitecase.com

*Counsel for Defendants Warner Bros.*
*Discovery Inc., David M. Zaslav, and*
*Gunnar Wiedenfels*

September 24, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................3

I.      THE FAC FAILS TO STATE A SECTION 10(B) AND RULE 10B-5

CLAIM ...................................................................................................................3

      A.     The Opposition Fails to Show Any Challenged Statement is

Actionable ...................................................................................................3

            1.     The Challenged Statements Were Not False or Misleading ............3

            2.     The Challenged Statements Are Inactionable Puffery...................11

            3.     Plaintiffs' Confidential Witnesses Add Nothing ...........................12

      B.     Plaintiffs Fail to Plead Scienter.................................................................12

            1.     The Opposition Fails to Show Motive and Opportunity................12

            2.     The Opposition Fails to Show Defendants Acted with

Conscious Misbehavior or Recklessly ..........................................14

II.     THE SECTION 20(A) CLAIM FAILS ...................................................................16

CONCLUSION...........................................................................................................................16

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995)................................................................................................ 13

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ............................................................................................. 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2017)............................................................................................. 16

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................................... 8, 9

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011)............................................................................ 13

*City of Warren Police & Fire Retirement System v. World Wrestling Entertainment, Inc.*,
477 F. Supp. 3d 123 (S.D.N.Y. 2020)............................................................................ 10

*In re CRM Holdings, Ltd. Sec. Litig.*,
2012 WL 1646888 (S.D.N.Y. May 10, 2012) ................................................................. 9

*In re Express Scripts Holdings Co. Sec. Litig.*,
773 F. App'x 9 (2d Cir. 2019)............................................................................... 8, 10, 14

*Fadem v. Ford Motor Co.*,
352 F. Supp. 2d 501 (S.D.N.Y. 2005).......................................................................... 8, 15

*Fadem v. Ford Motor Co.*,
2003 WL 22227961 (S.D.N.Y. Sep. 25, 2003)............................................................... 14

*Holbrook v. Trivago N.V.*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019)................................................................. 4, 14

*Kocourek v. Shrader*,
391 F. Supp. 3d 308 (S.D.N.Y. 2019).............................................................................. 5

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd* 604 F. App'x 62 (2d Cir. 2015)......................... 7

ii

*Nandkumar v. AstraZeneca PLC*,
2023 WL 3477164 (2d Cir. May 16, 2023) ................................................................. 4

*In re Nematron Corp. Sec. Litig.*,
30 F. Supp. 2d 397 (S.D.N.Y. 1998)........................................................................... 6

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 186 (2015)................................................................................................. 10

*In re Piedmont Lithium Inc. Sec. Litig.*,
712 F. Supp. 3d 301 (E.D.N.Y. 2024) ...................................................................... 13

*In re Progress Energy, Inc. Sec. Litig.*,
371 F. Supp. 2d 548 (S.D.N.Y. 2005).................................................................. 5, 16

*Rand v. Starter Corp.*,
1995 WL 322024 (S.D.N.Y. May 30, 1995) ............................................................. 4

*Rapoport v. Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000).......................................................................... 9

*Rmed Intern., Inc. v. Sloan's Supermarkets, Inc.*,
2002 WL 31780188 (S.D.N.Y. Dec. 11, 2002) ...................................................... 15

*S.C. Ret. Sys. Grp. Tr. v. Eaton Corp. PLC*,
791 F. App'x 230 (2d Cir. 2019) .............................................................................. 8

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
75 F.3d 801 (2d Cir. 1996)........................................................................................ 9

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2021)...................................................................................... 13

*Shetty v. Trivago N.V.*,
796 F. App'x 31 (2d Cir. 2019) ................................................................................ 4

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)....................................................................... 16

*SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*,
2020 WL 2473595 (S.D.N.Y. June 17, 2020) .......................................................... 5

*In re Tempur Sealy Int'l, Sec. Litig.*,
2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019) ........................................................ 14

iii

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)............................................................................................. 10

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011)............................................................................................. 10

Defendants respectfully submit this reply in further support of their motion to dismiss the First Amended Complaint ("Motion" or "Mot.") (ECF No. 47) and in response to Plaintiffs' opposition to the Motion ("Opposition" or "Opp.") (ECF No. 51).

## PRELIMINARY STATEMENT

The Motion describes how the FAC's alleged fraudulent statements fall into two categories, each with a self-evident and debilitating flaw:

First, the FAC alleges WBD disclosed that the NBA contract was up for renewal, but failed to state how important that renewal was to the business. As the Motion explained, the problem with that theory is that WBD stated publicly, and repeatedly, that WBD could lose the NBA rights and that loss posed a significant risk to the business. Just as important, the markets knew this, as evidenced by the wall-to-wall media coverage of the negotiations and their importance.

Second, the FAC alleges WBD made statements about its contractual matching rights, but it failed to state it could not match the competing offers for the NBA rights. The problem there is that the alleged misstatements were made months before WBD could have presented a matching offer. The FAC offers no facts to support that Defendants knew *when the statements were made* that WBD could not match any potential competing offer.

Nowhere in the Opposition's 34 pages will the Court find a straightforward answer to these problems. As to the first category, Plaintiffs do not contest that the challenged statements were truthful, WBD disclosed that renewal may not occur, and the negotiations were widely publicized. They resort to arguing that WBD omitted certain details and the "paramount importance" of the rights to WBD. But the law does not require disclosure using particular phrases. Besides, the disclosures were detailed about how the failure to renew could harm WBD.

As to the second category, Plaintiffs admit WBD truthfully disclosed it had matching rights

and tried to exercise them. Plaintiffs do not dispute that the alleged misstatements were made months before WBD could match, nor do they cite factual allegations demonstrating the impossible—that WBD had clairvoyant knowledge about how the negotiations would play out. Plaintiffs merely rely on speculative reports about other offers, parrot the NBA's position from months after Defendants' statements, and try to spin WBD's lawsuit against the NBA against WBD. None of these attempts can overcome the lack of factual allegations to support Plaintiffs' falsity theory.

The FAC also pleads that Defendants' statements describing the negotiations as "constructive" and their hope for renewal misled the public. But the Opposition disregards that these sorts of statements, in the context of business negotiations, are inactionable puffery.

As for the confidential witness allegations, the Opposition tacitly concedes that the FAC lacks facts to support that these witnesses could offer relevant information to support Plaintiffs' claims. It also leaves unaddressed that these witnesses only offer public information.

WBD also demonstrated there are no well-pled facts to support scienter. Plaintiffs lack a meaningful response to Defendants' showing that Defendant Wiedenfels' trades were neither suspiciously timed nor unusual in size such that they could support that Defendants were motivated to commit fraud. Plaintiffs also fail to identify any particularized allegations to support that Defendants knew of facts that contradicted their statements to support a conscious misbehavior or recklessness theory. Plaintiffs' reliance on the NBA's rejection and WBD's related lawsuit against the NBA to infer that Defendants "knew all along" the negotiations would fail is pure speculation.

The Opposition points to no well-pled facts supporting an inference of fraudulent intent more compelling than the obvious non-fraudulent inference: WBD hoped to keep the NBA rights and tried to match a competing offer consistent with its contractual rights, but the NBA ultimately

2

rejected its matching offer. Indeed, Plaintiffs provide no meaningful response to the question posed in the Motion: Why would WBD mislead investors about its ability to retain the NBA rights if it knew it would ultimately have to tell the market it lost those rights? Plaintiffs' inability to answer this question reveals the implausibility of their unsupported fraud theory. Amendment would be futile, and this Court should dismiss with prejudice.

**ARGUMENT**

## I.    THE FAC FAILS TO STATE A SECTION 10(B) AND RULE 10B-5 CLAIM

### A.    The Opposition Fails to Show Any Challenged Statement is Actionable

Two categories of purported misstatements are at issue: statements concerning the importance of the NBA rights to WBD and statements regarding WBD's ability to match competing offers. The FAC should be dismissed because (1) none of the alleged misstatements were false or misleading; (2) the statements were inactionable puffery; and (3) the confidential witness allegations add nothing.

#### 1.    The Challenged Statements Were Not False or Misleading

**WBD did not mislead investors about the importance of the NBA rights**

As the Motion shows, Defendants *did* disclose the importance of the NBA rights to WBD and the potential impact to WBD's business if WBD were to lose those rights. Mot. 14–15.[1] The importance of the NBA rights to WBD and WBD's potential loss of those rights were also the subject of public discussion. *Id*. at 15–16. *The Opposition does not refute any of this. See* Opp. 9–16.

Plaintiffs argue Defendants omitted specific details in their statements about the NBA rights' impact on WBD's revenue, goodwill, carriage rates, advertising revenue, negotiation

---

[1] "Mot. [#]" and "Opp. [#]" refer to the Motion and Opposition's brief pages.

3

position with other sports leagues, and that "WBD internally viewed the NBA Rights as an 'irreplaceable asset.'" Opp. 10 (citing FAC ¶¶ 97–100, 109–10, 112–15, 118–21).  But Plaintiffs do not explain how this additional detail or alternate phrasing renders any of Defendants' disclosures misleading.  *E.g.*, *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *2 (2d Cir. May 16, 2023) (plaintiffs "must demonstrate with specificity why and how each statement is materially false or misleading" (cleaned up)).

Anyway, Plaintiffs are wrong in describing WBD's disclosures as "vague" because WBD did disclose, in detail, that the failure to renew the NBA contract could materially impact revenue and goodwill.  *See, e.g.*, ECF No. 48-11 at 11 (acknowledging NBA renewal was a trigger that could impact goodwill); *id.* at 44 (stating failure to renew "could negatively affect our estimates of the fair value of our reporting units" and lead to an "impairment charge related to goodwill and other intangible assets"); *see also* ECF No. 48-10 at 16-17 (stating "failure to renew, renewal of less favorable terms, or termination" of content agreements "may cause a decline in . . . revenue" and there were "no assurances" WBD could maintain "licenses to recurring sports events").

Moreover, Defendants' clear disclosures about the importance of the NBA rights to WBD's business were not misleading simply because they did not use the particular words Plaintiffs today suggest.  *E.g.*, *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *19 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom. Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019) ("There is no reason here to substitute plaintiffs' own 'linguistic preference[s]' for those of the Company's, and we decline to 'attribute to investors a child-like simplicity' by presuming their incapacity to comprehend the basic meaning of plain English terms." (cleaned up)); *Rand v. Starter Corp.*, 1995 WL 322024, at *4 (S.D.N.Y. May 30, 1995) (fraud inference not supported by theory based on company's "choice of words").  Besides, the law does not require disclosure of all information that would be

4

"interesting" to an investor about "a disclosed fact." *Kocourek v. Shrader*, 391 F. Supp. 3d 308, 329–30 (S.D.N.Y. 2019) (cleaned up).

Plaintiffs also do not contest that the NBA rights' importance to WBD, the negotiations, and their uncertain outcome were obsessively discussed in the media.[2]  Opp. 12–13.  Nor could they—press articles underpin the FAC.  *E.g.*, FAC ¶¶ 103–105, 107, 116, 133.

Instead, Plaintiffs state that "whether an allegedly omitted fact was available to the market often is a fact intensive inquiry," and that Defendants do not point to a disclosure that included "the specific facts concealed." Opp. 12.  But this argument misses the point: the nature of the press specifically addressed the importance of the NBA rights to WBD's business, including the potential impact on revenue, goodwill, and programming—precisely the information Plaintiffs claim was concealed.  *E.g.*, FAC ¶ 107 (quoting article stating that losing rights would be "a huge blow to not only WBD's linear cable business, but also WBD's flagship streaming service"); ¶ 104 (similar); ECF No. 48-15 at 4 (reporting WBD would have trouble charging its then-subscriber fees if NBA rights were lost); ECF No. 48-21 at 3 (reporting WBD was about to lose sports rights "with which it has become inextricably linked").  The Court can decide now that the purportedly concealed information was publicly available.  *E.g.*, *In re Progress Energy, Inc. Sec. Litig.*, 371 F. Supp. 2d 548, 552–53 (S.D.N.Y. 2005) (holding, at motion-to-dismiss stage, defendants did not have to disclose public information); *SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, 2010 WL 2473595, at *9 (S.D.N.Y. June 17, 2020) (finding, at motion-to-dismiss stage, facts allegedly concealed were publicly available).

---

[2] Plaintiffs argue seven articles Defendants submitted were "improperly cite[d]." Opp. 8–9, n.2. Plaintiffs' cases are nonbinding, distinguishable, and precede Second Circuit precedent that states that courts can take judicial notice of press.  *See id.*; *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022).  The Court can, and should, take judicial notice of these documents.

Plaintiffs try to sidestep the overwhelming public discourse by arguing that Defendant Zaslav "counteracted" this information through a May 2024 conference statement. Opp. 13. There, Defendant Zaslav answered a question about what WBD would be like "without the NBA." ECF No. 48-8 at 8. Zaslav responded that WBD was still in talks with the NBA and that WBD was "very comfortable" with its position in relevant markets and was "strategically focused on making sure [it] ha[d] a robust offering of sports." *Id*. Nothing in this colloquy contradicts or negates WBD's disclosures or the media coverage about the NBA rights' importance to WBD.

Plaintiffs also contend they alleged "investors were unaware . . . of the specific facts" Defendants purportedly concealed. *Id*. at 12. But the FAC offers only conclusory allegations that *Plaintiffs* and other class members did not know "adverse facts" concerning WBD's "business and financial condition," and had *Plaintiffs* and other class members "known the truth," they would not have purchased securities. FAC ¶¶ 183, 184 (Count I). These claims presume Plaintiffs never read WBD's disclosures, watched TV, or read the sports or business sections of major newspapers. Still, whether any individual plaintiff or class member was aware of the information is irrelevant: Plaintiffs' *class-action* allegations depend on a fraud-on-the-market theory, which means all publicly available information is reflected in the stock price. *See* FAC ¶ 174 ("WBD securities are traded in an efficient market[.]"); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998) ("The Complaint is premised upon a 'fraud on the market' theory, such that matters within any particular plaintiff's . . . knowledge would not be particularly relevant to the claims and likely defenses.").

Lastly, the fact that WBD took an impairment charge in August 2024 cannot support Plaintiffs' falsity theory because the charge was taken *after* the alleged misstatements, and losing the NBA rights was not the sole factor contributing to the impairment charge. Mot. 17–18.

Plaintiffs argue Defendants seek to "gin up" a "factual dispute" and that Defendants' "counterfactual cannot be credited." Opp. 15. But that argument is contrary to their allegations. FAC ¶ 140 (reflecting various triggers led to goodwill impairment); ¶ 141 (reflecting impairment was based on "a full re-evaluation, not a response to one individual factor"); ECF No. 48-9 at 2; ECF No. 48-22 at 6. Plaintiffs cannot, and do not, refute the charge's timing or the reasons the disclosures listed for it. *See* Opp. 15. Plaintiffs' hindsight assumptions cannot support falsity. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("[W]ithout contemporaneous falsity, there can be no fraud.").

### **WBD did not mislead investors about its matching rights**

The Motion demonstrated the impossibility that WBD knew it lost the rights *months* before WBD had an opportunity to match any offers. Mot. 18–19. Plaintiffs seek to bolster the FAC's unsupported claim by obfuscating the chronology. But obfuscation does not substitute for well-pled facts.

Plaintiffs claim the FAC alleges Defendants knew of "crippling limitations" to matching any competing offer before the Matching Period. Opp. 18. But none of the cited allegations support that Defendants knew, *months* before the Matching Period began, that WBD "could not and would not" match other offers. *Id.* These allegations only reference speculative reports before the Matching Period about potential third-party offers and WBD's ability to match them (FAC ¶¶ 102–08, 116); a conclusory allegation that Defendants were refusing to match unspecified offers at some unidentified time (*id.* ¶ 117); and hindsight allegations based on the NBA's rejection of WBD's matching offer and its aftermath (*id.* ¶¶ 122–35). None of them say anything about Defendants' knowledge that WBD could not match any competing offer *at the time* Defendants made their statements. Plaintiffs' conclusory statements are "insufficient to meet the requirements

of Rule 9(b) and the PSLRA." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 570 (S.D.N.Y. 2004).

Plaintiffs now claim Defendants' statements were misleading because WBD did not disclose the Matching Clause's text.[3] *E.g.*, Opp. 17–18; *see also id.* at 4, 11, 19. But this allegation appears nowhere in the FAC, so it should be disregarded. *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long standing precedent . . . that parties cannot amend their pleadings through issues raised solely in their briefs."). In any event, this fact does not render any of the challenged statements misleading. The statements merely stated that WBD had matching rights, which it indisputably did. Nor do Plaintiffs point to any authority that says WBD had a duty to disclose the Matching Clause's text. *Cf. In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 12 (2d Cir. 2019) ("Disclosure of an item of information is not required simply because it may be relevant or of interest to a reasonable investor." (cleaned up)); *S.C. Ret. Sys. Grp. Tr. v. Eaton Corp. PLC*, 791 F. App'x 230, 235 (2d Cir. 2019) (executive was "under no obligation to provide information on the tax consequences of a hypothetical action that was not, technically, precluded").

Plaintiffs argue Defendants were also "neither willing nor able" to rely on the Matching Clause because an article from May 2024 claimed Defendant Zaslav was unwilling to pay above $2.1 billion to match any competing offer. *See* Opp. 17 (citing FAC ¶¶ 116, 117). The article cites unnamed sources speculating that Defendant Zaslav believed he would have to pay between $1.8 billion and $2.1 billion to retain the NBA package, and that he refused to pay $2.4 billion *during the Exclusive Negotiation Period*, which is "why the bidding ventured into the marketplace." *See* Tom Friend, *NBA formalizing deals with Disney, Amazon, NBC*, Sports

---

[3] The Opposition and FAC define "Matching Clause." Opp. 4; FAC ¶ 84.

Business Journal, May 22, 2024, https://www.sportsbusinessjournal.com/ Articles/2024/05/22/nba-formalizing-media-rights-deals-disney-amazon-nbc/.  Plaintiffs offer no reason to credit the speculation in this article.  *Bristol-Myers Squibb*, 312 F. Supp. 2d at 563 ("These conclusory allegations and opinions 'taken from a newspaper reporter's notebook' cannot satisfy the strictures of Rule 9(b) or the PSLRA and cannot be a predicate for fraud . . . ." (cleaned up)).  Setting that aside, the article does not even support Plaintiffs' assertion that WBD was unable to or "refusing" to match *after* the Exclusive Negotiation Period.  *See* FAC ¶ 117; *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("If these documents contradict the allegations of the . . . complaint, the documents control and this Court need not accept as true the allegations in the . . . complaint.").

Indeed, Plaintiffs' premise that WBD could not match any competing offers is itself nothing but a conclusory allegation.  Mot. 21–22.  Plaintiffs simply *say* Defendants could not match competing offers based on the NBA's position in anticipation of litigation from July 2024, months after the alleged misstatements, and Plaintiffs' understanding of the NBA's ultimate deals with NBCUniversal and Amazon.  *See* Opp. 22–23 (citing FAC ¶¶ 134–35).  Neither later event supports the inference that WBD could not match when the challenged statements were made. *See*, *e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) (plaintiffs failed to allege circumstances to support that statements about strong sales were false despite later announcement that sales had declined); *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) (citations to unproven allegations and reports cannot serve as evidence of fraud).

Still, WBD *did* match Amazon's offer and sued to enforce its rights.  Mot. 21.  That this lawsuit settled does not support that Defendants' statements—from months before the

settlement—were misleading. Opp. 23. Plaintiffs' characterization of WBD's lawsuit as "frivolous," *id.*, is legally irrelevant window dressing.

*City of Warren Police & Fire Retirement System v. World Wrestling Entertainment, Inc.*, 477 F. Supp. 3d 123 (S.D.N.Y. 2020) ("*WWE*"), Opp. 16–17, serves only to highlight the FAC's lack of well-pled allegations. In *WWE*, the plaintiff sufficiently alleged that defendants' statements about media agreements were misleading. 477 F. Supp. 3d at 132–33. Unlike here, the complaint in *WWE* alleged particularized facts from confidential witnesses, who were directly involved in the events at issue, that showed defendants had no basis to believe what was stated. *Id*. at 137. Here, there are no such particularized allegations. *See* Mot. 23–25; *infra* § I.A.3.

Far from "tout[ing] the Matching Clause" as a "silver bullet," *see* Opp. 20, Defendants acknowledged the uncertainty surrounding the negotiations' outcome, which was echoed in the press. Mot. 19. Plaintiffs claim Defendants did not spell out clearly enough the Matching Clause's limitations. Opp. 20. Defendants did not have to state the obvious, or damage WBD's position during negotiations. *See*, *e.g.*, *Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 131 (2d Cir. 2011) ("Disclosure is not a rite of confession or exercise of common law pleading." (cleaned up); Mot. 19–20. Defendants disclosed and the market understood that the outcome was uncertain.[4]

---

[4] Relying on cases citing *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 186, 189 (2015), Plaintiffs argue Defendants omitted the "critical importance" of the NBA rights and the limitations of the Matching Clause. Opp. 21, n.5. But this argument fails because Plaintiffs do not "identify particular (and material) facts going to the basis for the . . . opinion . . . whose omission makes the . . . statement . . . misleading to a reasonable person reading the statement fairly and in context." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (cleaned up). The challenged statements were true, even if there were "fact[s] cutting the other way." *See Tongue*, 816 F.3d at 212 (cleaned up); *Express Scripts*, 773 F. App'x at 13 (statements about relationship were inactionable, despite strained negotiations).

Plaintiffs also claim Defendants "waived . . . that their accuracy defense applies to any other . . . statements." Opp. 21, n.5. This argument is belied by Plaintiffs' arguments that the alleged misstatements were true. *E.g.*, Mot. 1, 3, 20.

Lastly, Plaintiffs claim that in response to an analyst question, Defendant Zaslav "omitted the critical importance of the NBA Rights as WBD's best defense against churn and the increasing risk of losing the NBA Rights." Opp. 15. Plaintiffs mischaracterize the exchange. *See id.*; FAC ¶¶ 114–15. The analyst did not ask what WBD's "best defense against churn was"—the analyst asked what "churn benefits" WBD got from bundles, which Zaslav and another executive accurately answered. ECF No. 48-6 at 18–21. This exchange does not support falsity.

### 2.    The Challenged Statements Are Inactionable Puffery

Defendants demonstrated that all but one of the alleged misstatements were inactionable puffery. Mot. 23. Plaintiffs concede at least one alleged misstatement is inactionable. Opp. 24 (omitting FAC ¶ 109). They nonetheless argue that the statements "that use 'hope' and 'very comfortable' were tethered to false descriptions of the importance of the NBA Rights to WBD and the potency of the Matching Clause" and were, therefore, "made to reassure investors to specific risks." *Id.* Plaintiffs fail to identify the "false descriptions" that were "tethered" to these statements. *Id.* Plaintiffs solely mention Defendant Wiedenfels' statement at a JPMorgan conference that he was "hopeful" a mutually-beneficial solution could be reached with the NBA, and WBD had matching rights. Opp. 24 (citing FAC ¶ 118). It is undisputed that WBD had matching rights, so there is no falsehood attached to Defendant Wiedenfels' statement.

Plaintiffs contend Defendants' statements about being hopeful about the negotiations "did not align with the true facts known to Defendants," citing allegations in a footnote about Plaintiffs' interpretation of WBD's contractual rights, WBD's litigation position against the NBA, and Defendants' access to information. Opp. 25, n.8 (citing FAC ¶¶ 84–86, 136–39, 144–46). None of these allegations takes Defendants' statements out of the category of permitted optimism. As shown, courts have found similar statements, including statements about having a "very, very

11

solid" relationship with a negotiating partner, and discussions about being "very productive," inactionable. Mot. 23.

### 3. Plaintiffs' Confidential Witnesses Add Nothing

Defendants showed that the confidential witnesses offer no support to Plaintiffs' claims. Mot. 23–25; FAC ¶¶ 59, 64, 91–92.[5] Plaintiffs do not dispute the identified shortcomings. Opp. 25. Their only response is that confidential witnesses need only be "in a position to possess" the information alleged. Opp. 25. But that sums up Plaintiffs' problem—their witnesses were not in a position to possess relevant information. As Plaintiffs tacitly concede, none of these witnesses interacted with the Individual Defendants; none were responsible for WBD's public disclosures; none were involved in the NBA negotiations; and four of five did not even work at WBD during the Class Period. FAC ¶¶ 59–60, 64–65, 91–93, 95–96. Moreover, as Defendants demonstrated, the information the confidential witnesses allegedly possessed—that the NBA rights were important and Zaslav was leading the negotiations—does nothing to show that Defendants' statements were misleading. *See* Mot. 24.

### B. Plaintiffs Fail to Plead Scienter

### 1. The Opposition Fails to Show Motive and Opportunity

The FAC fails to allege how Defendant Wiedenfels' trades were unusual or suspicious. Mot. 25–27. Plaintiffs do not contest that several of the factors to prove this theory are absent from the FAC, including Defendant Wiedenfels' net profits, the percentage of the holdings the trades represented, and trades by other insiders. Opp. 29–30. Plaintiffs concede three of the four

---

[5] Plaintiffs argue these allegations support falsity and scienter. Opp. 25–26. As this brief and the Motion show, these allegations support neither element. Mot. 25, n.3.

trades occurred before WBD and the NBA began negotiating, and the fourth came before the Matching Period. *Id.*

Defendants demonstrated that the trades constituted a small percentage of Defendant Wiedenfels' holdings at the time of each trade. Mot. 26. Plaintiffs offer a higher, but still comparatively low percentage (9%), without explanation. Opp. 29. But both sides' cases show Defendant Wiedenfels' trades were not unusual, even if they represented 9% of his trades, because that would represent a small fraction of his total holdings. *Compare In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74–75 (2d Cir. 2021) (sale of 80% of holdings days after not selling in decades established scienter); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 420–22 (S.D.N.Y. 2011) (similar) *with Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (trade was not unusual because it "represented less than 11% of holdings"); *In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 312 (E.D.N.Y. 2024) (sale of 13.19% of shares was a "small fraction" of total).

Plaintiffs also try to argue that the trades' timing was suspicious because the first three sales occurred "when Defendants downplayed the importance of the NBA Rights," and the last one occurred before WBD submitted its matching offer. Opp. 29–30. But Plaintiffs cannot get around that the bulk of the trades preceded *any* negotiations, and the FAC lacks well-pled allegations that Defendants *knew* they would not succeed in retaining the NBA rights. Similarly, that Defendant Wiedenfels did not sell any stock and increased his holdings during the previous eleven and a half months before the Class Period, *see* Opp. 29, does nothing to suggest his later trades were because he knew the negotiations would fail months before they did.

13

### 2. The Opposition Fails to Show Defendants Acted with Conscious Misbehavior or Recklessly

Along with their unpersuasive motive-and-opportunity theory,[6] Plaintiffs offer no allegations to rehabilitate their other scienter theories. *See* Opp. 26–32.[7]

First, Defendants showed that the FAC's allegations about the Individual Defendants' corporate positions, access to information, and involvement in the negotiations do not support scienter. *See* Mot. 28–29. Plaintiffs now argue Defendants' involvement in the negotiations, access to the Agreement and Matching Clause, statements demonstrating knowledge about the NBA Rights and Matching Clause, WBD's matching offer, and the importance of the NBA rights bolster their theory that Defendants "knew or recklessly disregarded that their . . . statements . . . were false and misleading." Opp. 26–28, 30–32. But *none* of the allegations Plaintiffs cite in the Opposition support that Defendants had knowledge of, or recklessly disregarded, information that was contradictory to what they disclosed. *Id.* (citing FAC ¶¶ 57–74, 94–96, 97, 99, 112, 118, 125–29); *see also Express Scripts*, 773 F. App'x at 15 ("These facts do not, however, provide strong circumstantial evidence of misbehavior or recklessness, because Defendants' statements were consistent with the facts and information available at the time."). Plaintiffs' "abject failure to identify any reports or statements containing adverse facts that defendants had access to at the time the statements at issue were made is itself fatal." *Holbrook*, 2019 WL 948809, at *21; *see also Fadem v. Ford Motor Co.*, 2003 WL 22227961, at *8 (S.D.N.Y. Sep. 25, 2003) (rejecting theory

---

[6] If Plaintiffs cite these trades to support recklessness, this argument also fails because these allegations do not allege highly unreasonable conduct "that constituted an extreme departure from the standards of ordinary care." *In re Tempur Sealy Int'l, Sec. Litig.*, 2019 WL 1368787, at *9 (S.D.N.Y. Mar. 26, 2019) (cleaned up).

[7] Defendants showed that all of Plaintiffs' attempts at pleading scienter failed. Mot. 31–35 (citing all scienter allegations, *see* FAC ¶¶ 144–67). Thus, Plaintiffs' waiver argument fails. Opp. 31–32.

14

based on "tenuous prognostications . . . that were not date specific and only hopeful at best").

Defendants also showed that WBD's lawsuit to enforce its matching rights weighed against a scienter inference.  Mot. 29.  Plaintiffs respond that WBD's allegations in the 2024 NBA lawsuit stood in "stark contrast" to Defendant Zaslav's alleged "prior assurance" in 2022 (years before the Class Period) that WBD did not "have to have the NBA."  Opp. 31.  Not only is Defendant Zaslav's 2022 statement legally irrelevant (which Plaintiffs do not dispute), but it does not contradict WBD's position in the lawsuit that the NBA illegally rejected its matching offer.

Plaintiffs also argue the NBA lawsuit's quick resolution supports scienter.  Opp. 28–29. Plaintiffs do not dispute that cases are overwhelmingly settled and that this is a typical business decision.  Instead, they claim the lawsuit was pretextual.  *Id*.  Plaintiffs ask the Court to believe that a sophisticated party would pursue an incredibly high-profile case and then settle it for show. This is implausible.  Plaintiffs offer no facts concerning the *NBA*'s settlement rationale; disregard the benefits they acknowledge WBD obtained from the settlement, *e.g.*, FAC ¶¶ 162–63; and ignore the settlement occurred *after* the Class Period, *id*. ¶ 161.[8]  Unlike *Rmed Intern., Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *2 (S.D.N.Y. Dec. 11, 2002), where the court denied a motion to exclude settlement evidence because that evidence could bolster an argument about "facts at the time of the alleged misconduct," the WBD-NBA settlement came *months after* the alleged misstatements and is Plaintiffs' attempt to improperly rely on "20-20 hindsight."  *Id*.

There are no alleged facts to support that Defendants made statements deliberately intending to mislead the market.  The only plausible and reasonable inference that can be drawn

---

[8] Plaintiffs alternatively argue Defendants were "reckless in speaking on something they never bothered to investigate."  Opp. 32, n.10.  The Court should disregard this unpled assertion.  *Fadem*, 352 F. Supp. 2d at 516.

15

from the facts is that Defendants engaged in tough, publicized negotiations with the NBA; the NBA rejected WBD's matching offer; and WBD sued to enforce its rights. Mot. 25.

## II. THE SECTION 20(A) CLAIM FAILS

Plaintiffs identify no allegations or law to support their Section 20(a) claim. Opp. 33. Contrary to Plaintiffs' assertions, the FAC does not plead a primary violation or the Individual Defendants' culpable participation, so this claim fails. *See* FAC ¶¶ 187–192; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2017); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438–49 (S.D.N.Y. 2014).[9]

### CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the FAC with prejudice, and grant such further relief as the Court deems just and proper.

Dated: September 24, 2025

 */s/ Jonathan D. Polkes*
Jonathan D. Polkes
Stacy Nettleton
Joshua D. Weedman
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 819-8200
jonathan.polkes@whitecase.com
stacy.nettleton@whitecase.com
joshua.weedman@whitecase.com

Veronica Gordon (admitted *pro hac vice*)
WHITE & CASE LLP
200 South Biscayne Blvd, Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
veronica.gordon@whitecase.com

---

[9] The Court should deny leave to amend because Plaintiffs already amended once, amendment would be futile, and Plaintiffs do not explain how they can cure the FAC's defects. *Progress Energy*, 371 F. Supp. 2d at 553.

*Counsel for Defendants Warner Bros. Discovery Inc., David M. Zaslav, and Gunnar Wiedenfels*

17

**CERTIFICATE OF WORD COUNT**

Pursuant to the Court's Individual Rules of Practice in Civil Cases, undersigned counsel for Warner Bros. Discovery Inc., David M. Zaslav, and Gunnar Wiedenfels certifies that this brief contains 4,999 words, which complies with the word limit ordered by the Court (ECF No. 43).

Dated: September 24, 2025

> */s/ Jonathan D. Polkes*
> Jonathan D. Polkes

18